[No. 1311.]

·CAROLINE GRUBER, RESPONDENT, v. W. H. BAKER AND
JOSEPH MUNCKTON, APPELLANTS.

·EQUITABLE ACTION TO SET ASIDE A DEED ON THE GROUND OF FRAUD—
EVIDENCE — DEED INTENDED AS MORTGAGE—ESTOPPEL.—Adam Bay,
brother of plaintiff, owned an interest in the mine in controversy.   He
mortgaged his interest to his sister, thereafter the mortgage was satisfied,
and a deed absolute upon its face from Bay to plaintiff recorded.
Munckton, defendant, purchased the interest from plaintiff.   Upon the
trial he sought to show that the deed from Bay to plaintiff was intended
as a mortgage and that Bay was the owner of the interest in the mine:
*Held*, that Munckton having purchased the interest and received a deed
from the plaintiff is estopped from denying her right to make the deed
or to deny her title to the property.

DEED—MORTGAGE—BONA FIDE PURCHASER.—Where a deed intended as a
mortgage is recorded, and no defeasance appears of record, a *bona fide*
purchaser from the grantee acquires an absolute title, free from the
equity of redemption of the mortgageor.

IDEM—REPRESENTATIONS—ESTOPPEL.—A mortgageor, who by his representa-
tions, induces a third party to receive an absolute deed from the mort-
gagee, who has a deed absolute upon its face, is estopped to afterwards
deny that the mortgagee had a right to convey the absolute title.

IDEM—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT.—An attorney
employed by the parties to a deed to draw it up, cannot, in a controversy
between one of the parties and a third person, be compelled, over the
objection of such party, to testify as to communications between himself
and his clients, at the time the deed was made, tending to show that it
was intended as a mortgage.

PARTIES — REAL PARTY IN INTEREST.—Where two co-tenants separately
convey their interest in a mine, a subsequent deed from one of them, con-
veying to the other all his interest and title in the land for the expressed
purpose of enabling the grantee to sue in her own name to set the first
deed aside for fraud, and recover all the land, and providing that, in the
event of recovery, such grantee shall reconvey to the grantor his interest,
and pay him his proportion of any damages recovered, does not give the
grantee such an interest in the grantor's interest as will entitle her to sue
in her own name to set both the deeds aside.   (By Murphy, J.,
Belknap, J., dissenting.)

IDEM—PLAINTIFF'S RIGHT TO SUE—MAINTENANCE.—The assignment of a
bare right to file a bill in equity for a fraud committed on the assignor
cannot be maintained in the name of the assignee.   It is contrary to
public policy and savors of the character of maintenance.   (Belknap, J.,
dissenting.)

FRAUD—EVIDENCE TO ESTABLISH.—A party alleging fraud must clearly and
distinctly prove the fraud as alleged.   The facts sufficient to establish a
fraud should be clear and convincing.   Fraud may be shown by circum-
stances.   When the evidence, whether direct or circumstantial, is so
clear and strong as to produce conviction in the mind of the judge of the
truth of the charge, it will be sufficient.

IDEM—EVIDENCE REVIEWED—HELD SUFFICIENT.—Complainant owned a part interest in a mine, but lived at a distance, and took no part personally in its management. Her brothers hauled the ore from it and acted as her agents. A rich vein of ore was discovered, but was concealed by the foreman so that it could not be seen. Defendants, who were informed by the foreman of the discovery, and also that he had concealed it, and were kept posted as to the development, negotiated with complainant for the purchase of her interest, and received a deed from her. Neither complainant nor her agents were informed of the discovery and its value. *Held,* that the deed was obtained through fraud. (See opinion for full statement of facts.)

IDEM—MEASURE OF DAMAGES.—The true measure of damages, in actions of this character, is not confined to the difference between the market value of plaintiff's interest in the mine and the value she received; but she is entitled to recover the profits upon the ore taken from the mine by the defendants.

APPEAL from the District Court of the State of Nevada, Lyon County.

R. R. BIGELOW, District Judge.

The facts are stated in the opinion.

*W. E. F. Deal, M. N. Stone* and *Trenmor Coffin,* for Appellants.

I. The decision of the district court, upon the evidence and findings, should have been in favor of appellants. (Evidence reviewed.)

II. The district court erred in permitting this case to be tried without making Adam Bay a party thereto. He was the real party in interest. Respondent was at the time of the commencement of this action a mere nominal trustee for Adam Bay, and the latter should have been a party. (1 Dan. Ch. Pr. 220; Barb. Part. 431, 439; Pom. Rem., Secs. 124, 143; Sto. Eq. Pl., Sec. 207; *Nichols* v. *Williams,* 22 N. J. Eq. 64; *Livingston* v. *Peru Iron Co.,* 2 Paige Ch. 393; *Bailey* v. *Inglee,* 2 Paige Ch. 279.)

III. The court erred in sustaining respondent's objections to the questions asked James A. Stephens. All that was attempted to be shown by Mr. Stephens was that the deed, though absolute on its face, was made and intended as a mortgage to secure the payment of two thousand five hundred dollars which respondent had loaned Adam Bay.

The respondent's testimony would have been discredited and it would have been necessary to make Adam Bay a party to the

action.  Mr. Stephens was not only a witness to the deed but he was employed by both parties to it to draw it, and the matter he was asked to disclose was in no sense a confidential communication. (*Colt* v. *McConnell,* 116 Ind. 256; *Michael* v. *Foil,* 100 N. C. 178; 6 Am. St. Rep. 577; *Hanlon* v. *Doherty,* 109 Ind. 37; *Caldwell* v. *Davis,* 10 Col. 481; *Dunn* v. *Amos,* 14 Wis. 106; *Mobile R. R. Co.* v. *Yeates,* 67 Ala. 164; *Gulick* v. *Gulick,* 39 N. J. Eq. 516; *Foster* v. *Hall,* 12 Pick. 89; 22 Am. Dec. 400; *Whiting* v. *Barney,* 30 N. Y. 330; 86 Am. Dec. 385; *Hebbard* v. *Haughian,* 70 N. Y. 54; *Coveney* v. *Tannahill,* 1 Hill, 33; 37 Am. Dec. 287; *Brazell* v. *Fair,* 26 S. C. 370; *Randall* v. *Yates,* 48 Miss. 684; *People* v. *Van Alstine,* 57 Mich. 69; *Gore* v. *Harris,* 8 Eng. L. & E. 147; *In Re Austin,* 42 Hun, 516; *McLean* v. *Clark,* 47 Ga. 24; *Todd* v. *Munson,* 53 Conn. 579; *Parrish* v. *Gates,* 29 Ala. 254; *Gallagher* v. *Williamson,* 23 Cal. 331; 83 Am. Dec. 114; *Pulford's Appeal,* 48 Conn. 247; *State* v. *McChesney,* 16 Mo. App. 259; *Root* v. *Wright,* 21 Hun, 344; *Britton* v. *Lorenz,* 45 N. Y. 57; *House* v. *House,* 61 Mich. 69; 1 Am. St. Rep. 570; *Goodwin G. S. Co.'s Appeal,* 117 Pa. St. 514; 2 Am. St. Rep. 696; *Hatton* v. *Robinson,* 14 Pick. 416; 25 Am. Dec. 415; *Alden* v. *Goddard,* 73 Me. 345; *De Wolf* v. *Strader,* 26 Ill. 227; 79 Am. Dec. 371; *Hager* v. *Schindler,* 29 Cal. 66.)

The rule as to confidential communications made by a client to his attorney is strictly construed, as it has a tendency to prevent a disclosure of the truth. (*Satterlee* v. *Bliss,* 36 Cal. 508; *Foster* v. *Hall,* 12 Pick. 97; 22 Am. Dec. 400; *Gower* v. *Emery,* 18 Me. 82.)

IV.  So far as the interest conveyed by Pollard to respondent is concerned, the action cannot be maintained.  The agreement contains the terms and conditions upon which respondent holds the Pollard interest.  It was merely assigned to respondent to enable her to bring this suit to set aside his deed for fraud. (*Robbins* v. *Deverill,* 20 Wis. 142; Pom. Rem., Secs. 153, 158, 249, 250; 1 Dan. Pr. 220; *Crocker* v. *Bellangee,* 6 Wis. 645; 70 Am. Dec. 490; *Graham* v. *La Crosse etc. R. R.,* 102 U. S. 148; *Marshall* v. *Means,* 12 Ga. 61; 56 Am. Dec. 444; *Norton* v. *Tuttle,* 60 Ill. 130; *Dickenson* v. *Seaver,* 44 Mich. 624; 2 Sto. Eq., Sec. 1040; *Barker* v. *Barker,* 14 Wis. 131; *Martin* v. *Veeder,* 20 Wis. 466; 2 White & Tudor's Lead. Cas. Eq. 1602; Ad. Eq. 149, 150; 3 Pom. Eq., Sec. 1286; A. & E. Ency. of Law, 833; *Tufts* v. *Mathews,* 10 Fed. R. 611; *Prosser* v. *Edmonds,* 1 Younge & Coll. Eng. Ex. Eq. 481; *Smith* v. *Harris,* 43 Mo. 557; *Powell* v. *Knowler,* 2 Atk. 224; *De Hoghton* v. *Money,* 2 Ch. L. R. 164; *Hill* v. *Boyle,* 4 Eq. L. R. 260; *Milwaukee & M. R. R.* v. *Milwaukee & W. R. R.,* 20 Wis. 174; 88 Am. Dec. 740.)

V. The respondent and her agents and A. A. Pollard were not laboring under any disability either mental or physical, and they had every opportunity to know the condition and value of their own property. The law imposed on appellants no duty to inform respondent or Pollard of the knowledge they had of an improvement in the mine. (*Kintzing* v. *McElreth*, 5 Pa. St. 469; *Harris* v. *Tyson*, 24 Pa. St. 359; 64 Am. Dec. 661; 1 Sug. Ven. 8; *Tuck* v. *Downing*, 76 Ill. 71: *Southern D. Co.* v. *Silva*, 125 U. S. 249; *Williams* v. *Spurr*, 24 Mich. 336; *Gordon* v. *Butler*, 105 U. S. 553; *Laidlaw* v. *Organ*, 2 Wheat. 178; *Haywood* v. *Cope*, 25 Beav. 140; *Clapham* v. *Shillito*, 7 Beav. 146; *Banta* v. *Savage*, 12 Nev. 151; Big. Fr. 368; *Dambmann* v. *Schulting*, 75 N. Y. 55; 2 Pom. Eq. 393; Kerr Fraud, 389; *Vernon* v. *Keyes*, 12 East 616; 1 Stor. Eq., 205-214; *Reynolds* v. *Palmer*, 21 Fed. R. 435; *Fuller* v. *Buice*, 80 Ga. 395; *Fox* v. *Mackreth*, 2 Cox. Eq. 320; *Fox* v. *Mackreth*, 2 Brown Ch. 400; *Dolman* v. *Nokes*, 22 Beav. 402; *Dicconson* v. *Talbot*, L. R. 6 Ch. App. 32; *Cleland* v. *Fish*, 43 Ill. 284; *Livingston* v. *Peru Iron Co.*, 2 Paige Ch. 390.)

The district court did not find that Munckton and Baker had anything to do with concealing the development. Active collusion or conspiracy is the gist of the action, and a mere passive cognizance of fraud or the illegal action of others is not sufficient to show conspiracy. An active participation is necessary. (*Evans* v. *People*, 90 Ill. 384; *Miles* v. *State*, 58 Ala. 390.)

VI. To authorize the cancellation of a conveyance on the ground of fraud, pecuniary loss or damage sustained by the plaintiff at the time of the sale must also be shown. If the market value of the mine was no greater at the time of the sale than the price paid, or if there was no inadequacy at the time in the price paid, judgment should have been for defendants. (2 Pom. Eq., Sec. 898: *Todd* v. *Fambro*, 62 Ga. 668; *Batty* v. *Lloyd*, Vernon's R. 141; *Hale* v. *Wilkinson*, 21 Grat. 87; *Cornelius* v. *Molloy*, 7 Pa. St. 296; *Marriner* v. *Dennison*, 78 Cal. 202; *Purdy* v. *Bullard*, 41 Cal. 448; *Garrow* v. *Davis*, 15 How. 279; *Clark* v. *White*, 12 Pet. 198; 1 Sug. Ven. 8, 420, 421; *Southern D. Co.* v. *Silva*, 125 U. S. 249; *Haywood* v. *Cope*, 25 Beav. 149; *Henry* v. *Everts*, 29 Cal. 610; *Graffam* v. *Burgess*, 117 U. S. 193; *Atlantic Delaine Co.* v. *James*, 94 U. S. 207; *Caples* v. *Steel*, 7 Or. 494; *Morrison* v. *Lods*, 39 Cal. 385; *Jennings* v. *Broughton*, 5 DeG., McN. & G. 127; *Pasley* v. *Free-*

man, 3 Term R. 53; *Christmas* v. *Spink*, 15 Ohio, 603; *Fox* v.
*McMackreth*, 2 Cox, 320; 1 Sto. Eq. Jur., Sec. 203; Big. Fr.
400, 632-33; *Van Epps* v. *Harrison*, 5 Hill, 63; 40 Am. Dec. 314.

VII. To set aside a deed on the ground of fraud, proof
should be made so cogent, weighty and convincing as to leave
little, if any, doubt upon the mind that a fraud has been com-
mitted. The testimony of one witness, unless sustained by
strong corroborating circumstances, is never sufficient to estab-
lish the charge of fraud if such charge is denied. The proof in
this case was neither of the character nor weight required to
set aside deeds of real estate. (*Brigham* v. *Thompson*, 4 Nev.
232; *Atlantic Delaine Co.* v. *James*, 94 U. S. 214; *Southern D.
Co.* v. *Silva*, 125 U. S. 249; *United States* v. *Iron Silver M. Co.*
128 U. S 676; *Tuck* v. *Downing*, 76 Ill. 71; *Graham* v. *Pancoast*,
30 Pa. St. 97; *Dalton* v. *Dalton*, 14 Nev. 427; *Keiser* v. *Gammon*,
95 Mo. 217; *Sanborn* v. *Stetson*, 2 Story, 481; *Christmas* v. *Spink*,
15 Ohio, 600; *Walker* v. *Hugh*, 59 Ill. 378.)

The testimony of Neighley is, of itself, of no weight what-
ever. He was a party to the fraud. The confession of such a
witness cannot prevail against the solemn deeds conveying the
title, and the testimony of appellants and three other witnesses.
(Big. Fr. 192, Sec. 12; *Davis* v. *Council*, 92 N. C. 725; *Keiser* v.
*Gammon*, 95 Mo. 217; *Evans* v. *Bicknell*, 6 Ves. 183; *McShane* v.
*Hazelhurst*, 50 Md. 121; *Hutchinson* v. *Ainsworth*, 73 Cal. 452;
2 Am. St. Rep. 823.)

VIII. In order to establish a charge of fraudulent misrep-
resentation, the plaintiff must show, by clear and decisive proof,
that the defendant has made a misrepresentation with regard to
a material fact; that such representation was false and misled
the plaintiff, and but for such misrepresentation the sale would
not have been made. In order that fraudulent representations
may be ground for relief in law or in equity, they must be
material in their nature and relevant to the transaction, and be
the determining ground of the negotiations. (*Grymes* v. *Sand-
ers*, 93 U. S. 55; *Southern D. Co.* v. *Silva*, 125 U. S. 250;
*Smith* v. *Richards*, 13 Pet. 37; *Taylor* v. *Guest*, 58 N. Y. 266;
*Ingraham* v. *Jordan*, 55 Ga. 356; *Noel* v. *Horton*, 50 Iowa, 687;
*Clark* v. *Everhart*, 63 Pa. St. 347; *Todd* v. *Fambro*, 62 Ga. 664;
*Klopenstein* v. *Mulcahy*, 4 Nev. 300; 2 Pom. Eq. Sec. 890.)
The true distinction existing between the cases cited by respond-

ent, and the case at bar, consists in the situation of the parties. A vendor is justly placed under greater legal obligations to disclose to the purchaser any hidden defect or quality of the property sold which would impair its value, and known by him to exist, because, being the owner and in the possession of the property sold, he is presumed by the law to know of such defects and should disclose them, but the position and situation of the vendee is entirely different; what he may learn concerning any hidden or latent property or quality of the property sold which enhances its value beyond the price paid for it, and which is unknown to the vendor, he is not required to make known to the vendor as a condition of the sale. And this principle of law has been especially applied in cases involving the sale and purchase of mines and other property having a speculative value such as the case at bar. (*Kintzing* v. *McElreth,* 5 Pa. St. 469; *Harris* v. *Tyson,* 24 Pa. St. 359; 64 Am. Dec. 661; *Southern D. Co.* v. *Silva,* 125 U. S. 249; *Williams* v. *Spurr,* 24 Mich. 336; *Gordon* v. *Butler,* 105 U. S. 553; *Laidlaw* v. *Organ,* 2 Wheat. U. S. 178; *Dambmann* v. *Schulting,* 75 N. Y. 55; *Banta* v. *Savage M. Co.,* 12 Nev. 151; *Reynolds* v. *Palmer,* 21 Fed. R. 435; *Fuller* v. *Buice,* 80 Ga. 395; *Fox* v. *Mackreth,* 2 Cox Eq. 320; *Fox* v. *Mackreth,* 2 Brown Ch. 400; *Dolman* v. *Nolan,* 22 Beav. 402; *Haywood* v. *Cope,* 25 Beav. 506; 1 Sto. Eq., Secs. 205, 312; Big. Fr. 368.)

*Robert M. Clarke* and *Robert H. Lindsay,* for Respondent.

I. Caroline Gruber is the proper plaintiff. As to the Bay title she is the sole party in interest. (Gen. Stat. 3026, 3027; Bliss Code Pl., Sec. 51; *Cottle* v. *Cole,* 20 Iowa, 481; *Allen* v. *Brown,* 44 N. Y. 229; 1 Van S. Pl. 111.) If Adam Bay ever had any interest as *cestui que trust,* it passed to Mrs. Gruber by the deed introduced by defendants. Defendants are estopped to deny Gruber's title. (Big. Est. 258-59-60.) As to the Pollard interest, plaintiff is entitled to maintain the suit. (Bliss Code Pl., Secs. 47, 51, 52, 54; Gen. Stat. Sec. 3028; *Wetmore* v. *San Francisco,* 44 Cal. 294; *McMahon* v. *Allen,* 35 N. Y. 403; *Dickenson* v. *Burrill,* L. R. I. Eq. 337; *Graham* v. *La Crosse etc. R. R. Co.,* 102 U. S. 148; *Smith* v. *Logan,* 18 Nev. 152.)

II. In establishing fraud, positive proof is not required; a mere preponderance is sufficient. Fraud may be inferred from

the circumstances of the case, and slight circumstances will be sufficient. (Sto. Eq. Jur., Sec. 190; Big. Fr. 142-3, 146-7;. *Dameron* v. *Jameson*, 4 Mo. App. 304; *Burch* v. *Smith*, 15 Tex· 219; 65 Am. Dec. 155.) Tested by the rules of evidence the· proofs are abundant to establish gross actual fraud. (Evidence· discussed.)

III. Mere silence under ordinary circumstances is not fraud-- ulent, but when the opportunities and knowledge of the ven- dor and vendee representing the intrinsic qualities of the prop- erty sold are not equal and the price paid is inadequate, silence is fraudulent. (1 Perry Tr., Sec. 177; 2 Kent Com. 482-5; Big. Fr.. 594-598; Kerr Fr. 94-98; *McAdams* v. *Gates*, 24 Mo. 223; *Barron* v. *Alexander*, 27 Mo. 530; *Lunn* v. *Shermer*, 93 N. C. 164; *Brown* v. *Gray*, 6 Jones L. 103; 72 Am. Dec. 563; *Merritt* v. *Robinson*, 35 Ark. 483; *Rawdon* v. *Blatchford*, 1 Sand. Ch. 344; *Bowman* v. *Bates*, 2 Bibb, 47; 4 Am. Dec. 677; *Turner* v. *Harvey*, 1 Jacob, 178; *Hadley* v. *Clinton etc. Co.*, 13 Ohio St. 508; 82 Am. Dec. 454; 2 Kent Com. 232.)

In a case where mere silence is not fraudulent a very little is. sufficient to vitiate the transaction. (Kerr Fr. 98, 99; Big. Fr. 490-504; *Laidlaw* v. *Organ*, 2 Wheat. 178; *Hadley* v. *Clinton etc. Co.*, 13 Ohio St. 502; 82 Am. Dec. 454; 2 Kent Com. 490; 1 Perry Tr. 180; *Dameron* v. *Jamison*, 4 Mo. App. 304; *Turner* v. *Harvey*, 1 Jacob, 169-178; *Bowman* v. *Bates*, 2 Bibb, 47; 4 Am. Dec. 677;. *Prescott* v. *Wright*, 4 Gray, 461.)

IV. Defendants acquired their information and advantage· wrongfully and this is a fraud. (*Phillips* v. *Homfray*, L. R. 6 Ch. App. Cas. 770-780; Pom. Eq. Jur. 904.)

V. Defendants colluded with Oest, Neighley, Dixon and Hamilton, and availed themselves of their fraudulent acts, and this renders the deeds invalid. (Big. Fr. 576; *P. & S. P. T. Co.. v. India Rubber Co.*, 10 Ch. App. 526; *Young* v. *Hughes*, 32 N. J. Eq. 385; *Lincoln* v. *Claflin*, 7 Wall. 136; *Daniel* v. *Brown*, 33 Fed. R. 849; 1 Per. Tr., Sec. 172; 2 Lead. Cas. Eq. 953.)

VI. Oest, Neighley, Bell and Dixon committed a fraud upon Pollard and Gruber, and defendants received and seek to· keep the benefit of it. This makes defendants *particeps criminis* with Neighley *et al.* (1 Per. Tr., Sec. 172; Big. Fr., Sec. 232; 2 Lead. Cas. Eq. 953.)

VII. Fraud appearing, the contract of sale is invalid and plaintiff is entitled to have it annulled and to have judgment· for the profits of mining. Fraud vitiates everything. The fraud appearing, defendants cannot defend themselves and hold on to·

the fruits of their unlawful acts, by testifying that the property was worth no more than the price paid. This principle is thoroughly established by text writers and the decided cases, and no case exists where the amount of pecuniary damages has been made the basis of the decision. (*Bowman* v. *Bates*, 2 Bibb, 47; 4 Am. Dec. 677; *Daniel* v. *Brown*, 33 Fed. R. 849; *Vernon* v. *Keys*, 12 East. 637; *Hagee* v. *Grossman*, 31 Ind. 223.)

Where the action is not to rescind but to recover damages for the fraud, the measure of damages is not the market value of the property fraudulently obtained, but the real value of the property. (*Hubb·ll* v. *Meigs*, 50 N. Y. 480; *Tuckwell* v. *Lambert*, 5 Cush. 23.)

By the Court, MURPHY, J.:

This is a bill in equity to set aside deeds made by Caroline Gruber and A. A. Pollard to Joseph Munckton, and from Munckton to W. H. Baker, and to have the same canceled, annulled, and declared void, on the grounds that the same were obtained by fraud and inadequacy of consideration. The complainant avers that on the third day of December, 1887, Oest, Pollard, and Caroline Gruber were the owners, as tenants in common, of a mining claim, situate in the Devil's Gate and Chinatown mining district, at Silver City, Lyon county, Nevada, known and commonly called the "Oest Mine;" Oest being the owner of one half, Pollard one-quarter, and Mrs. Gruber one-fourth. They worked the mine as co-partners, sharing the profits and bearing the losses in proportion to their respective interests. Oest and Pollard lived at Silver City, Mrs. Gruber at Dayton, four miles distant; but one Mat. Bay, a brother of Mrs. Gruber, lived at Silver City, and acted as agent for her in the working and management of the mine. W. H. Neighley was foreman at the mine, subject to Oest's orders. During the time of the ownership of Pollard and Gruber, developments of great importance were made, without the knowledge of either Pollard or Gruber, by cutting and excavating through the clay wall, generally called the "foot wall," a body of gold and silver bearing ore five feet in thickness, thirty feet in length, and of unknown depth; which ore was of the net value of five hundred dollars per ton, and of the aggregate value of two hundred and fifty thousand dollars. That before the discovery of this body

of ore the mine was not worth to exceed eight thousand dollars, but after the development, the property was worth two hundred and fifty thousand dollars. That said development was made known to Oest. That Pollard and Mrs. Gruber had no knowledge of the discovery, nor could they, with reasonable diligence, know or discover the same. And plaintiff avers that it was the duty of Oest, as co-owner, co-partner and manager, to have made the said development and discovery known to his co-owners, and to have extracted and sent the said ore so discovered to the mill for reduction; that the facts of the said discovery were concealed from Pollard and Mrs. Gruber by the said Oest, and were by him imparted to Joseph Munckton and W. H. Baker, for the purpose of cheating and defrauding the said Pollard and Mrs. Gruber; that Oest, Munckton, and Baker then entered into an agreement, confederation, and conspiracy to fraudulently acquire the interests of Pollard and Mrs. Gruber for a grossly inadequate price and consideration, and to cheat and defraud them out of their said interests in said mine. The complaint contains specific averments constituting the alleged fraud. The answer of the defendants Munckton and Baker contain specific denials of each and every allegation of the complaint in so far as it alleges fraud, and also denies the ownership of the property by Mrs. Gruber, and alleges that she is not the real party in interest in this action. The plaintiff had made Fred. Oest a party defendant, but during the trial the action was dismissed as to him, and proceeded against Munckton and Baker. The cause was tried before the court without a jury. Judgment was rendered in favor of the plaintiff for the surrendering and cancellation of the deeds mentioned, and for the sum of twenty-two thousand dollars damages, and costs of suit. Defendants appeal from the judgment, and from the order of the court overruling their motion for a new trial.

Appellants claim that the court erred in overruling their motion, wherein they asked to have Adam Bay made a party plaintiff. The ground for their motion was that some time prior to the sale of the mine by Mrs. Gruber to Munckton, Adam Bay owned one-fourth interest in the mine. He borrowed two thousand five hundred dollars from his sister, Mrs. Gruber, giving her his note and a mortgage on his interest in the mine to secure the payment thereof. Some time thereafter, Adam Bay gave to Mrs. Gruber a deed to his interest in the

mine, and Mrs. Gruber entered satisfaction of the mortgage in the records of Lyon county, Nev. The appellants claim that, notwithstanding Mrs. Gruber has entered satisfaction of the mortgage debt, and holds a deed to the property, that it was the intention of the parties, and that it was so understood between them, that the deed was given and received to operate as a mortgage only. The testimony given on the trial of this cause does not support the appellants' views. Mrs. Gruber says that there was no understanding between herself and Adam Bay that the deed given was merely to secure the payment of the money loaned; that it was given by Bay and received by her as an absolute deed, and conveying to her all the right, title and interest of Adam Bay in and to said property to her; and that she had dealt with the property as her own. Munckton testified: "I saw Adam Bay. He was on his wagon. I asked him if he would take less than four thousand dollars for his interest. He said: 'Anything that Mat. does about this is satisfactory to me.' I then went to Mat. and told him I had concluded, if this affair was settled up, that I would give him four thousand dollars for their interest, and he said, 'All right,' and I gave him twenty dollars on the bargain to bind it, and then he said: 'You have got to take a deed from Mrs. Gruber.'" Mat. Bay is the brother of Adam Bay and Mrs. Gruber, and was acting as the agent for Mrs. Gruber. Munckton having received the deed from Mrs. Gruber, is now estopped from denying her right to make the deed, or her title to the property. If Adam Bay had any interest in the property at the time of the sale from Mrs. Gruber to Munckton, he having stood by, and did not disclose his title and object to the sale, he is now precluded by estoppel from claiming the property, or any interest therein, from Munckton, who was induced to buy and take the deed from Mrs. Gruber by the declarations of Adam and Mat. Bay that she was the true owner. Where a deed intended as security is recorded, the defeasance not being recorded, a purchaser for value from the grantee, without notice of the defeasance, will hold an absolute title as against the grantor and his grantees. It is an absolute deed as regards third persons, and a *bona fide* purchaser will take the land discharged of the equity of redemption of the mortgageor. (*Brophy Min. Co.* v. *Brophy & D. Gold etc. Min. Co.*, 15 Nev. 107.) And a party is also estopped from asserting title to prop-

·erty when his declarations have induced another, who was about to purchase it, to believe that it was owned by a third person. (*Way* v. *Council,* 76 Iowa, 741; *Shuford* v. *Shingler,* 30 S. C. 612; *Ratcliff* v. *Belfont Iron Works,* 87 Ky. 559; *Wise* v. *Newatney,* 26 Neb. 88; *Williams* v. *Fletcher,* 129 Ill. 356; *Birch* v. *Steppler,* 11 Colo. 408.)

On the trial of this cause the defendants called J. A. Stephens, an attorney at law, who drew up the mortgage and deed from Adam Bay to Mrs. Gruber mentioned in the fore part of this opinion, and endeavored to prove by him the understanding had between Adam Bay and Mrs. Gruber, at the time of the drawing of the deed, as to whether the deed was not drawn and intended as a mortgage to secure the payment of money due by Adam Bay to Mrs. Gruber, and to enable Mrs. Gruber to escape the payment of state and county taxes upon the mortgage. Stephens declined to answer the question for the reasons: (1) He was acting as the attorney for Bay and Gruber, and what was said to him at that time was received by him in the performance of his professional calling, and what was said he claimed to be a privileged communication; (2) if he was compelled to answer the questions, it would injure former clients of his. The plaintiff also objected to the witness answering the questions. The rule that an attorney cannot disclose communications made to him by his clients is not, as now understood, confined to communications made in contemplation of, or in the progress of, an action or judicial proceeding, but extends to communications in reference to all matters which are the proper subject of professional employment. An attorney employed by two or more parties to give advice in a matter in which they are mutually interested can, no doubt, on litigation subsequently arising between themselves, be examined as a witness, at the instance of either of the parties, as to communications made when he was acting as attorney for all. But he cannot disclose such communication in a controversy between such parties, or either of them, and third persons. The communications made to Stephens by Adam Bay and Mrs. Gruber when he drew the deed for them were privileged. (*Gulick* v. *Gulick,* 39 N. J. Eq. 516; *Michael* v. *Foil,* 100 N. C. 189; 6 Am. St. Rep. 577; *Britton* v. *Lorenz,* 45 N. Y. 56; *Whiting* v. *Barney,* 30 N. Y. 330; 86 Am. Dec. 385; *Yates* v. *Olmsted,* 56 N. Y. 632;

*Williams* v. *Fitch*, 18 N. Y. 550; *Root* v. *Wright*, 84 N. Y. 76; 38 Am. Rep. 495.)

The complaint in this action was filed on the fourteenth day of December, 1888. On the same day, A. A. Pollard made, executed and delivered to Caroline Gruber a deed purporting to convey all his right, title, and interest in and to said mine and mining claim. Said deed contains the following clauses: "Also, all equitable right or title, claim, or demand, in said mine of the said first party; also, all right of action to set aside a certain deed made by the said first party to Joseph Munckton, dated December 3, 1887; also, all claim for damages arising from said deed; also, all claim or demand or right of action for damages, or for an accounting, or for the value of ores taken from said mine." On the same day, and as part of the same transaction, Pollard and Gruber entered into the following agreement: "The undersigned mutually acknowledge and agree as follows: 1st. The action this day commenced in the name of Caroline Gruber against Joseph Munckton and others is for the mutual benefit of the undersigned. Each of us are to share equally the advantages, and to bear equally the cost and expenses. The assignment this day made by A. A. Pollard to Caroline Gruber was made, for the purpose of enabling her to maintain the aforesaid action in her own name. When judgment is recovered, and the litigation finally terminated, said Caroline Gruber will assign and convey to said A. A. Pollard his part of the judgment and interest in the mine recovered. Witness our hands this fourteenth day of December, A. D. 1888. Mrs. Caroline Gruber [L. S.] A. A. Pollard, [L. S.]" This agreement was duly acknowledged before a notary public, and was entitled to be recorded, if it was not, in the records of Lyon county, Nevada. Appellants claim that this action cannot be maintained, as to the Pollard interest, in the name of the plaintiff, because she is not the real party in interest; that the assignment of Pollard to Gruber does not convey the legal title to the property, but merely the right to sue in her own name, and, immediately upon the termination of the suit, she binds herself to redeed to him his one-fourth interest in the mine and mining claim, and pay over to him one-half of whatever sum of money she may recover from the defendants as damages for the alleged fraud;

that such an agreement cannot be enforced under the laws of this state; it savors of maintenance.

Section 3026, Gen. Stat., reads: "Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in this act." The only interpretation that can be placed upon this section of the statute is that, whenever a thing in action transferable by law is absolutely assigned, so that the ownership passes to the assignee, without conditions or reservations, and the legal title or equitable claim is fully vested in him, he is the real party in interest, and must sue in his own name. Is Mrs. Gruber either the legal owner, or has she such an equitable claim in the Pollard interest in this mine, or in this cause of action, to permit her to maintain this action in her own name? We think not. From the reading of the deed and agreement between the parties, it was not intended that Mrs. Gruber should have any claim upon or interest in the property deeded to her by Pollard. She was merely permitted to commence an action in her own name for the cancellation of the deeds given by herself and Pollard to Munckton, and by Munckton to Baker, and the recovery of damages for the alleged fraud; and she was, upon the termination of the suit, to reconvey to him the same interest in the mine, and to account and pay over all moneys received by her in the nature of damages in proportion to his interest in the property. It would be doing violence to the statute to say that Mrs. Gruber was the real party in interest, under the facts in this case. Nor can we admit the correctness of the views expressed by the learned attorney for the respondent, that Mrs. Gruber was a trustee of an express trust. Were we to so decide, she would be permitted to do things indirectly, which another section of the statute directly prohibits. It never was intended by the framers of this law that a party, being of sound mind, capable of managing his own affairs, residing in the immediate vicinity, who did appear in court and testify as a witness on the part of the plaintiff, should be permitted to divest himself of his title, create a trust for the purpose of commencing and prosecuting an action at law or in equity, in the name of the assignee or trustee, for his benefit, and upon the termination of the suit, reconvey to him all the proceeds of such suit. We cannot sanction any such construction of our statute, and it made no

difference that Mrs. Gruber had a deed to the mine. The defendants had a right to demand that they be confronted by Pollard, who was the real party in interest.

In the case of *Robbins* v. *Deverill*, 20 Wis. 148, the court held that a partner could not maintain an action in his own name for the benefit of the firm, although the demand had been transferred to the plaintiff alone by words of absolute assignment. In the case of *Hoagland* v. *Van Etten*, 22 Neb. 683, the court said: "The language of the statute is plain and unambiguous: 'Every action must be prosecuted in the name of the real party in interest, except,' etc. This case is not within any of the exceptions named, and therefore must be considered with reference solely to section 29 of the code. If a party, having no interest in the subject-matter of the suit, who holds simply as assignee, and is to deliver to his assignor the proceeds of the action, may maintain an action on such an assignment, then section 29 has no meaning whatever. We do not care to enter into a discussion of the propriety or impropriety of requiring actions to be brought in the name of the real party in interest. The statute contains a plain provision which this court has no authority to disregard. We hold, therefore, that an assignee having no interest in the result of the suit, and not entitled to any portion of the proceeds thereof, is not entitled, under section 29, to maintain an action as the real party in interest." And in Minnesota "it was held, in some cases, that the beneficial owner of a negotiable bill or note payable to bearer, or indorsed in blank, might institute suit on it in the name of any one who would allow his name to be used for that purpose, and that, unless the maker had a defense to the note, good against the real owner, he could not be permitted to show that the plaintiff was not the real party in interest. * * * Although this rule might be correct at common law, it certainly is not good under the statute of this state, which provides that 'every action shall be prosecuted in the name of the real party in interest.' * * * It is apparent from the language used that it was not the intention of the indorser to make the indorsee the owner of the note, or of the money after collection, but simply to give him authority on the note to collect it. The relation of the indorser and indorsee is that of principal and agent. The agent cannot be the 'real party in interest,' in a suit brought on the note." *Rock Co. Nat. Bank* v. *Hollister*, 21 Minn. 385;

*Third Nat. Bank* v. *Clark*, 23 Minn. 268.) In the case of *Sinker* v. *Floyd*, 104 Ind. 292, it is said: "We are satisfied that under our code an action for a breach of covenant must be prosecuted in the name of the real party in interest, and that the real party in interest is the person entitled to the money recovered as damages." And in the case of *Bostwick* v. *Bryant*, 113 Ind. 448, the same court said: "The statute provides that every action must be prosecuted in the name of the real party in interest. * * * The answer shows clearly that Anna S. Bloomer is the owner of the note, and the real party in interest. The plain provisions of the statute cannot be avoided." (*Board of Comm'rs* v. *Jameson*, 86 Ind. 163.) In the case of *Phillips* v. *Bush*, 15 Iowa, 64, the court held that, when A. sold certain lands to B., making false and fraudulent representations as to the locality of the land sold, and at the request of B. conveyed the same to C. as security for the payment of an indebtedness from B. to him, in an action for damages for such fraudulent representations, A. was liable, and B., being the real party in interest, was the proper party plaintiff, notwithstanding the legal title was in C." The rule that actions must be prosecuted in the name of the real party in interest has always been the rule in equitable actions, as distinguished from actions at law, and the statutory enactment is nothing more than that which has always prevailed in equity. (*Grove* v. *Judy*, 24 W. Va. 298; *Kellam* v. *Sayer*, 30 W. Va. 198; 1 Van Santv. Eq. Pl. 72.)

Under the old practice, when law and equity were administered by different tribunals, the rule respecting parties in courts of law differed from those in courts of equity. The blending of the jurisdiction made it necessary to revise those rules to some extent. In doing so the legislature had this purpose in view: to do away with the artificial distinctions existing in courts of law, and to require the real party in interest to appear in court as such, knowing that the true rule had always prevailed in the courts of equity, that he who had the right was the person to pursue the remedy. We have adopted that by enacting section 3026, and it seems to us too plain for misconception. In construing statutes, we must consider the sections together, and that interpretation should be placed upon the language which will give to each and every section of the act its proper effect, and which at least will make it compatible with common

sense and plain dictates of justice. (*Maynard* v. *Newman*, 1 Nev. 271; *Ex-parte Siebenhauer*, 14 Nev. 368.)

Champerty and maintenance were defined as offenses in very early stages of the English law. The English doctrine of maintenance arose from causes peculiar to the state of society in which it was established. It was a principle of the common law that a right of action could not be transferred by him who had the right. When we seek the reason of this rule, we find it was an apprehension that justice would fail, and oppression would follow, if the right of action might be assigned. In early times this rule concerning rights of action was rigorously enforced, but this rigor has, however, been relaxed. The apprehension that justice would be trodden down if property in action should be transferred is no longer entertained, and the common-law rule now serves only to give form to some legal principles. The statute of limitations, statute of frauds, and the giving of costs against the unsuccessful party, have all taken place since the law of maintenance was enacted; and all these have contributed to prevent groundless and vexatious litigation. In states where the common-law rule still prevails, the laws concerning maintenance are still in force, and they all hold that a right of action may be transferred to a purchaser for a valuable consideration with complete effect. But we fail to find, in any decided cases, where a party has been permitted to maintain an action in his own name where he had no interest whatever in the result of the suit. We have no statute concerning champerty and maintenance in this state. Section 3021, Gen. Stat., reads: "The common law of England, so far as it is not repugnant to, or in conflict with, the constitution and laws of the United States, or the constitution and laws of this state, shall be the rule of decision in all the courts of this state." This court has held in a number of cases that the English statutes, in force at the date of the declaration of American independence, in so far as they were applicable to our situation, are a part of the common law which we have adopted. Why are not champertous contracts void in this state? True, they are not so declared by statute, but they were so at common law, and the common law of England has been recognized as part of our system; its principles being the rule of our decisions, except as modified by statute. Of course, these principles must be applicable to the nature of our institutions, and to the

genius of our form of government; to our wants, habits and
necessities. In a number of states they have no statutes against
champerty or maintenance, yet the courts of last resort hold that
the common law on these subjects prevails. The modern decis-
ions of the courts of the United States and England make a
distinction which before prevailed in the rules of the common
law, between maintenance which is innocent and that which is
unlawful. To maintain the suit of another is now, and always
has been, held to be unlawful, unless the person maintainiug
has some interest in the subject of the suit, or unless he is con-
nected with the assignor by ties of consanguinity or affinity.
Landlord and tenant, executors, administrators, trustees of an
express trust, the exercise of legal profession by an attorney,
and acts of charity to the poor, are all cases in which it is not
unlawful to give aid in the conduct of a suit before a court of
justice.

The reason of the rule, as applied to champerty and main-
tenance, with us, is to prevent litigation and the prosecution of
doubtful claims by strangers to them. If the owner is not dis-
posed to attempt the enforcement of a doubtful claim, public
policy requires that he should not be allowed to transfer his
right to another party for the purpose of prosecution, thereby
encouraging strife and litigation. It has, therefore, been
deemed beneficial to the public interest to prohibit a transaction
such as is attempted in this case, as being contrary to public
policy and void. The deed passed from Pollard to Gruber
with the understanding that it was not to convey any interest
in or title to the property whatever, but merely for the purpose
of allowing Mrs. Gruber to maintain this action in her own
name, for the benefit of Pollard, to set aside a deed made by
Pollard to Munckton, and which Pollard claimed had been
obtained by fraud. Therefore, Mrs. Gruber is not the real
party in interest, within the meaning of the statute, and places
the parties within the rule of law that the assignment of a bare
right to file a bill in equity for a fraud committed upon the
assignor will be held void as being against public policy; and
such an assignment cannot be maintained in either a court of
law or equity, nor can a trust be created in such an assignment.

In 1 Perry Trusts, section 69, he says: "The mere right to
file a bill in equity for a fraud committed upon the assignor,
or to sue for a tort, cannot be assigned, and a trust created in

such rights." Bigelow Fraud, 214, says: "A right of action for fraud cannot be conveyed at law or in equity. Equity will not enforce the demand of an assignee or a grantee of a right to sue for fraud when the action is confined to that wrong." 2 Story Equity Jur., section 1040*h*, says: "So an assignment of a bare right to file a bill in equity for a fraud committed upon the assignor will be held void, as contrary to public policy, and as savoring of the character of maintenance." To the same effect are, *Ryall* v. *Rowles*, 2 Lead. Cas. Eq. *820; 3 Pom. Eq. Jur., section 1276; Adams Eq. (7th Am. Ed.), *57; 1 Pars. Cont. 226; 1 Am. and Eng. Cyclop. Law, 833, Tit. "Assignments;" *Dayton* v. *Fargo*, 45 Mich. 153; *Dickinson* v. *Seaver*, 44 Mich. 624; *Brush* v. *Sweet*, 38 Mich. 574; *Morris* v. *Morris*, 5 Mich. 181; *Carroll* v. *Potter*, Walk. Ch. 355; *Marshall* v. *Means*, 12 Ga. 66; 56 Am. Dec. 444; *Morrison* v. *Deaderick*, 10 Humph. 344; *Smith* v. *Harris*, 43 Mo. 557; *Milwaukee & M. Ry. Co.*, v. *Milwaukee & W. R. Co.*, 20 Wis. 183; 88 Am. Dec. 740; *Crocker* v. *Bellangee*, 6 Wis. 645; 70 Am. Dec. 489. In Pomeroy's Remedies and Remedial Rights, section 153, he says: "The following are illustrations of personal interests or rights which cannot be assigned: * * * the right of a grantor to avoid his conveyance on the ground of fraud." In the case of *Jones* v. *Babcock*, 15 Mo. App. 150, Thompson, J., in delivering the opinion of the court, said: "We shall affirm the judgment in this case upon the sole ground that the bare right to complain of a fraud is not a vendible commodity. 'It has always been held,' said Bliss, J., 'that the assignment of a bare right to file a bill in equity for fraud upon the assignor, is void, as against public policy.' (*Smith* v. *Harris*, 43 Mo. 557, 562.) The case charged in substance, is that Frances J. Jones and Richard S. Jones, her husband, had made certain conveyances in trust to the defendant, Leicester Babcock, to secure certain debts; that Babcock, in 1874, secretly purchased the notes thereby secured, advertised the property for sale, sold the same as trustee, and caused it to be bid in in the name of the *cestui que trust*, but really for himself; that this fraud was not discovered until March, 1880; and that in May, 1880, Frances J. Jones and Richard S. Jones conveyed by quitclaim deed their right, title and interest in the premises thus sold under these deeds of trust to this plaintiff. What did this quitclaim deed convey to this plaintiff beyond the bare right to prosecute a suit in equity to set aside a trustee's sale on the

ground of fraud? That was all the grantors had to convey;
and while they could have asserted such a right themselves,
they could not assign it to another. * * * Here no title
has passed, but the trustee's sale in question was not void in
the sense that no title passed to the purchaser. It was merely
voidable at the election of the parties prejudiced thereby."

In the case of *Jones* v. *Hill*, 9 Bush, 695, the court said: "It
is a general rule, to which we can see nothing in this case con-
stituting an exception, that a contract or conveyance will not
be set aside for actual or constructive fraud except at the option
of the party defrauded." And to the same effect are the cases
of *Ayers* v. *Hewett*, 19 Me. 286; *Tufts* v. *Matthews*, 10 Fed. Rep.
610; *Norton* v. *Tuttle*, 60 Ill. 134. In *Livingston* v. *Peru Iron Co.*, 2
Paige, 393, it is said: "The complainant cannot recover upon
the bill in its present shape. Although the conveyance of the
land was obtained by fraudulent misrepresentation it was not
void. It was only voidable at the election of the vendor.
And the defendants, or some of them, were in the actual
possession of the premises, claiming title to the same under
their deed, at the time of the conveyance to the complain-
ant. The legal title to this property could not pass to
the complainant under that conveyance, while it was thus held
adversely. If John Livingston was still living he would be a
necessary party to a bill to rescind the sale on the ground of
fraud." In *Prosser* v. *Edmonds*, 1 Younge & C. 496, Lord
Chief Baron Abinger said: "The remaining cause of demurrer,
namely, that the plaintiffs have no right to equitable relief,
raises an important and curious question, which is this: whether
or not parties who either become purchasers for a valuable con-
sideration, or who take an assignment in trust of a mere naked
right to file a bill in equity, shall be entitled to become
plaintiffs in equity in respect of the title so acquired? Now, in
the course of the argument, it was urged that an equitable as
well as a legal interest may be the subject of conveyance, and
that the assignee of a chose in action may file a bill in equity to
recover it, though he cannot proceed at law for that purpose.
But, where an equitable interest is assigned, it appears to me
that, in order to give the assignee a *locus standi* in a court of
equity, the party assigning that right must have some sub-
stantial possession, some capability of personal enjoyment, and
not a mere naked right to overset a legal instrument. * * *

In the present case, it is impossible that the assignee can obtain any benefit from his security except through the medium of the court. He purchases nothing but a hostile right to bring parties into a court of equity as defendants to a bill filed for the purpose of obtaining the fruits of his purchase. * * * What is this but the purchase of a mere right to recover? It is a rule, not of our law alone, but of that of all countries, that the mere right of purchase shall not give a man a right to legal remedies. The contrary doctrine is nowhere tolerated, and is against good policy. * * * There are many cases where the acts charged may not amount precisely to maintenance or champerty, yet of which, upon general principles, and by analogy, to such acts, a court of equity will discourage the practice." This decision has never been reversed; but, upon the contrary, whenever the question has been raised on the right of the assignee to sue in his own name, to set aside a conveyance obtained by fraud when he was not the real party in interest, his application has been denied. (2 Spence Eq. Jur. 867; *De Hoghton* v. *Money*, L. R. 2 Ch. App. 164; *Hill* v. *Boyle*, L. R. 4 Eq. 263.) In deciding this case in the court below, the judge said: "I am still of the opinion, under the principles stated in the cases of *McMahon* v. *Allen*, 33 N. Y. 403; *Graham* v. *Lacrosse etc. R. R. Co.*, 102 U. S. 158, and *Dickinson* v. *Burrell*, L. R. 1 Eq. 337—that, where not only the right to bring the action is assigned, but also all interest in the property is conveyed, to the assignee, as was done here, the assignee can maintain the action." We cannot agree with the learned judge who presided at the trial of this cause, that "all interest in the property was conveyed to the assignee." All that was transferred was the mere right to commence and maintain this action in the name of Mrs. Gruber; and, upon the termination of the suit, she was not only to redeed to him a portion of the property recovered, but the entire portion as represented by the Pollard interest.

The case of *McMahon* v. *Allen*, has no application to this case whatever. In that case "Allen was the agent and attorney of Harrison. Allen knew that his client was in debt, and so knowing, induced Harrison, by fraudulent representations, to convey to him his interest in his mother's estate. Harrison being ignorant of the fraud practiced upon him, made a general assignment for the benefit of his creditors of all his property and rights of action, with full power to sue for and collect the same."

The assignee filed a bill to set aside the conveyance to the agent. It cannot control the present case, because the assignment and conveyance was made for the benefit of the creditors of Harrison, with full power to sue for their benefit, which made them the parties beneficially interested; and they were the real parties in interest when they were trying to secure their own just demands. It is an elementary principle of law that all' property which a debtor' has shall be responsible for his debts. Therefore, when Harrison sold the property to Allen, the creditors had such an interest in the property as would entitle them to maintain an action in their own names, under the statute of frauds, to set aside the conveyance to Allen, without any assignment ·from Harrison whatever.

The case of *Graham* v. *Railroad Co.* supports the views we have expressed in this opinion, and approves the decision in the case of *Prosser* v. *Edmonds,* and draws the distinction between that case and the cases of *McMahon* v. *Allen,* and *Dickinson* v. *Burrell,* and a number of other cases. The supreme court also approves of the opinions rendered in the cases of *Crocker* v. *Bellangee,* 6 Wis. 645; 70 Am. Dec. 489; and in *Milwaukee & M. Ry. Co.* v. *Milwaukee &' W. R. Co.,* 20 Wis. 183, 88 Am. Dec. 740, by saying: " A deed obtained from the grantor through fraudulent representations made by the grantee is not void, but voidable only at the election of the grantor, and that the conveyance of the same land by the grantor to another person is not the exercise of such election and does not avoid the former deed;. that, in order to avoid such former deed, some proceeding must be had by the grantor to which the grantee is a party; and that a subsequent purchaser . from the grantor cannot set up the alleged fraud of the first grantee to defeat his title—the court holding that the right of a vendor to avoid a sale or deed on the ground of fraud practiced by the vendee is not a right or interest capable of sale and transfer, so as to enable a subsequent vendee of such right, for such cause, to attack the title of the first vendee: that is a mere personal right, incapable of sale or transfer. * * * In other words, is this mere right to litigate the question, and to set aside the deed or release on account of fraud practiced upon the assignor, a subject of assignment and transfer? And will a court of equity allow the assignee to stand in the shoes of the assignor in respect to the remedies?" The court held that the assignee could not maintain the action in his own name.

In the present case, at the time Pollard made the deed to Mrs. Gruber, he had no title to convey, Pollard having prior thereto conveyed all his right, title, and interest in and to the mining claim to Munckton, and placed him in possession of the same; his deed to Munckton was not void, but merely voidable, and was a valid deed, as between the parties, until such time as Pollard should have instituted proper proceedings to have the same set aside on the ground of fraud perpetrated upon him by Munckton.    It cannot be disputed that, if an innocent party had purchased from Munckton, before these proceedings had been commenced, not knowing of the fraud—if a fraud had been perpetrated—he would hold the legal title to the property, as against Pollard.

The case of *Dickinson* v. *Burrell* is not in conflict with that of *Prosser* v. *Edmonds*.    In deciding that case, Lord Romilly said: "The demurrer is mainly supported on the case of *Prosser* v. *Edmonds*, which was decided, after long deliberation, by Lord Abinger; but I am of opinion that the case before me does not fall within the rule established by that decision."    His lordship then said: "If James Dickinson had thought fit, after the sale to Edens,   *   *   *   · to sell the same property to A. B., saying that the previous sale was a fraudulent one, and that, though he himself would not take any steps to set it aside, if A. B. thought fit to do so he might, and that he would sell all his interest in the property to A. B. for a sum of money then *bona fide* agreed on, in such a case, in my opinion, A. B. could have maintained this suit.   *   *   *   I think that the distinction between the conveyance of the property itself and the conveyance of a mere right to sue, or what in substance is a right to sue,   *   *   *   has been adopted and approved in many other cases; and it is, I think, founded in reason and good sense.   I am, therefore, of opinion that, if the present plaintiffs had given valuable consideration for the execution of the indenture,   *   *   * they would have been entitled to maintain this suit.   *   *   * It is contended that in a case of this description the fact that the conveyance is voluntary suggests the possibility of some secret understanding or subordinate agreement by which the property, when recovered, is to be reconveyed, or to be discharged from the trusts, and that in fact the voluntary conveyance is made only colorable, and for the purpose of instituting or maintaining such a suit as the present.   This may possibly

be shown hereafter in the progress of the cause; but on this demurrer, where I am bound to take the allegation as true, I cannot entertain any such suspicion. I am bound by the allegations in the bill, which I must assume to be true; and that being so, the right to sue is, in my opinion, incidental to the interest conveyed to the plaintiffs, and the demurrer must be overruled." The opinion does not only approve of the rule laid down in *Prosser* v. *Edmonds*, but also decides that where the property is conveyed for the purpose merely of maintaining a suit in the name of the assignee, it will not be permitted; for the judge says, if there is any secret understanding or subordinate agreement, by which the property, when recovered, is to be reconveyed or to be discharged from the trusts, and that in fact the voluntary conveyance is made only colorable, and for the purpose of instituting or maintaining such a suit as the present, this may possibly be shown hereafter, in the progress of the cause—intimating that, if such a state of facts were shown upon the trial of the cause, the bill would be dismissed, but upon the demurrer he could not inquire into the facts of the case; and the demurrer was overruled. In the present case we have the written agreement of the parties, as well as the testimony of Pollard, as to the understanding between themselves, that the property was to be reconveyed to him upon the termination of the suit. See, also, *Traer* v. *Clews*, 115 U. S. 539, where it is held that the mere right to file a bill in equity for a fraud committed upon the assignor will be void, as contrary to public policy. The mere fact that Mrs. Gruber and Pollard are tenants in common does not change the principle of this rule. They are strangers to one another in so far as their titles are concerned. One could sue without the other's consent, or sell her or his share to whom they pleased, and for whatever price they saw fit to fix upon it. In fact, they are independent of each other, and may deal with each other in the same manner as owners of separate property. The assignment to Mrs. Gruber of the Pollard interest being for the sole purpose of having her maintain this action in her own name, she is not the real party in interest, and to allow her to prosecute this suit as to the Pollard interest would be contrary to public policy. The court, therefore, erred in holding that Mrs. Gruber could main-

tain this suit as to the Pollard interest. The bill must be dismissed as to his interest.

The next inquiry is as to the character of the evidence that is requisite to establish fraud. A party alleging fraud must clearly and distinctly prove the fraud as alleged. If the fraud is not proved as alleged, relief cannot be had, although the party against whom relief is sought may not have been perfectly clear in his dealings; for fraud will not be carried, by way of relief, one tittle beyond the manner in which it is proven. The rules of evidence are the same in equity as at law; and when certain facts, as proved, amount to a fraud, is a question for the court. But the court is not justified in finding such facts upon any less or different kind of proof than would be required to satisfy a jury, for the law in no case will presume fraud. The presumption is always in favor of innocence, and not of guilt. In no doubtful matters should the court lean to the conclusion that a fraud has been committed; nor should it be assumed on doubtful evidence. The facts sufficient to establish a fraud should be clear and convincing. Circumstances of mere suspicion will not warrant the court in coming to the conclusion that a fraud has been committed. We do not wish to be understood as holding that, in order to establish fraud, it requires direct or positive proof; for in matters that regard the conduct of men the certainty of mathematical demonstration cannot be expected or required, and much of human knowledge on all subjects may be inferred from facts that are established. Care should be taken, however, not to draw conclusions hastily from premises that will not warrant it; but, if the facts established afford a sufficient and reasonable ground for drawing the inferences of fraud, the conclusion to which the proof tends must, in the absence of contradiction, be adopted. The motive with which an act is done may be, and often is, ascertained and determined by circumstances connected with the transaction. Various facts and circumstances evince sometimes, with unerring certainty, the hidden purposes of the mind. Therefore, fraud may be shown by circumstances. But when the evidence, whether it be direct or circumstantial, is so strong as to produce conviction in the mind of the judge of the truth of the charge, it will be sufficient. This we take to be the extent of the rule that fraud must be proved. But this does not authorize the finding of fraud on less than a preponderance of the evidence, taken as a

whole, for it is difficult to see how any disputed question of fact can be found except by the greater weight of evidence. The difference in the weight may be slight, but, unless it preponderates on the side of the plaintiff, the matter in dispute cannot be said to be proved; and this rule is adhered to more strictly in actions of this character than in any other class of civil cases, for it is said that while the law abhors fraud, it is also unwilling to impute it on slight and trivial evidence, and thereby cast an unjust reproach upon the character of parties. What amount or weight of evidence is sufficient proof of a fraud is not a matter of legal definition. The proof, however, must be satisfactory. It should be so strong and cogent as to satisfy the mind and conscience of a common man, and so to convince him that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest. It need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts from which a legitimate inference of fraud may be drawn. As an allegation of fraud is against the presumption of honesty, it requires stronger proof than if no such presumption existed.

The evidence in this case shows the following state of facts: Neighley was the foreman of the mine, and had control of the same. Oest was at the mine every day or two. Pollard crushed the ore at his mill, kept the books and accounts, paid the men, and was the superintendent, in so far it was necessary to have one. The Bay Brothers, who were acting as agents for Mrs. Gruber, had the contract for the hauling of the ore to the mill for reduction; were at the mine every day or two to haul the ore away. A rich body of ore was discovered in the mine on or about the twenty-third day of November, 1887. The man employed in the mine, and who made this discovery, went to Oest's house, called him out of bed, and informed him of the development in the mine. Neighley, on his return to the mine in the morning, found the prospect in the blacksmith shop which had been left there, and immediately proceeded to seek from whence it came, and found the place. Neighley then notified Oest and Munckton of the discovery. Baker was also notified of the strike, and was taken into the mine by Neighley, and permitted to examine the place from which the rich quartz came; and Neighley took samples of the ore, and prospected them for Baker's benefit. Immediately after the discovery in the mine

and the examination as made by Baker, Munckton proceeded to negotiate for the purchase of Mrs. Gruber's interest in the mine. The place from whence the rich quartz came was concealed by directions of Neighley, so that, if an owner had gone into the mine, he could not have found the place from which the rich ore came, with ordinary diligence, without some one who was aware of the covering up had pointed it out to him. Munckton had been, and was being, informed every day or two as to the condition of the mine, from the time of the discovery until he had purchased the Gruber interest, by Neighley and others employed in the mine, and was also notified by Neighley that the place from whence the rich rock came was covered up, so that it would not do the owners any good if they did go into the mine; and, although the agent of Mrs. Gruber was at the mine nearly every day, and did ask Neighley every day during the negotiations as to the condition of the mine, he was informed that there was no improvement in the ore body or the mine. And this fraud and deception was kept up from the date of the discovery until Munckton had received his deed for the property. Although the evidence is conflicting, yet the preponderance of the evidence is in favor of Mrs. Gruber's claim. Munckton, knowing that Neighley was perpetrating a fraud upon Mrs. Gruber, cannot be permitted to avail himself of the benefits thereof. He, knowing what Neighley was doing, became a party to the fraud; and in actions of this nature the true measure of damages are the profits derived from the property while in the possession of the purchaser. The facts in this case support the judgment as to the Gruber interest. The judgment of the court will be that Munckton and Baker shall reconvey to Mrs. Caroline Gruber one-fourth interest in the Oest mine, and the said Munckton and Baker pay to Mrs. Gruber the sum of eleven thousand dollars; that the action for the Pollard interest be dismissed; and that the appellants have judgment for their costs on appeal.

Hawley, C. J., concurring:

The right of Mrs. Gruber to maintain this action in her own name for the one-quarter interest deeded to her by Pollard is the only question upon which there is any difference of opinion among the members of this court. The terms of the agreement executed contemporaneously with the deed clearly show that

there was no absolute sale, no conveyance of the property, nor of any interest therein. Mrs. Gruber acquired no right, title, or interest in or to the one-quarter interest of Pollard in the Oest mine by the deed, or in the fruits of the litigation, so far as that interest is concerned. All that was conveyed to her, or that was intended to be conveyed, was the mere naked right to sue in her own name for the sole benefit of Pollard. There are some very respectable authorities which maintain the doctrine that the right to bring an action to cancel a deed for fraud cannot be conveyed or assigned even to a purchaser for value. Other more numerous and better considered cases declare that the party who has been defrauded may sell his equitable interest in the property to a third party, and that such third party may establish the fraud in equity, and thereby be protected in his purchase. These authorities recognize the distinction between an absolute conveyance of the property and the assignment of a mere right to sue for the benefit of the grantor. Where the conveyance is made to another person, *bona fide*, for a valuable consideration, such person can maintain the action in his own name, for he is the real party in interest. If a conveyance is made to a trustee for the benefit of creditors, minor heirs or persons who may inherit an interest in the estate, or in any case where the assignee has an interest in the fruits of the litigation, the action can be maintained for the same reason. But, if the transaction relating to the assignment or conveyance of the property amounts simply to a mere right in the assignee or grantee to sue in his name for the sole benefit of the assignor or grantor then the action cannot be maintained. All the authorities agree that the assignment of a bare right to file a bill in equity for a fraud committed on the assignor cannot be maintained in the name of the assignee. The fraud upon Mrs. Gruber and Pollard arose out of the purchase of their separate interests in the Oest mine, at the same time, in the same manner and from the same cause; but Mrs. Gruber was not thereby defrauded or damaged by the sale of Pollard's interest, nor was Pollard injured by the fraud upon Mrs. Gruber. They were both equally interested in having the transaction declared fraudulent, and beyond that their interests and rights were entirely separate and distinct. Neither had any right, title or interest whatever either in the damages, or in the property to be recovered by the other.

It is claimed that the assignment of the Pollard interest to Mrs. Gruber ought to be sustained because it tended to lessen the litigation, and to avoid the unnecessary expenses of separate suits; in other words, that appellants, instead of being prejudiced, have really been benefited by the assignment. The contention is not well founded. If two persons were injured in a collision upon a railroad, at the same time and place, one of them might, by assigning his cause of action for damages to the other, for the purpose of settling all disputed questions in one suit, materially lessen the expenses of the litigation, and cases might be imagined where such a course would be beneficial, instead of prejudicial, to the railroad corporation, the defendant in the action. But is it not equally clear that cases might frequently arise when it would be detrimental and injurious to the interests and legal rights of the defendant? If such a practice were permissible, the parties injured, by blending the causes of action into one suit, and thereby uniting the weaker with the stronger and clearer case, might stand a much better chance for a recovery on both than if each was made to rest exclusively upon its own merits. Would not the defendant in such an action, irrespective of the question of expense or injury, and without any proof that the assignment was champertous, have the right to object, and have his objections maintained upon the ground that the law does not permit such actions to be assigned? It is within the power of the legislature, whenever it is deemed advisable so to do, in the interest of public justice, to make causes of action for fraud assignable, so as to authorize any person to maintain such a suit for the benefit of another; and in my opinion, it is a safer and better course for the courts to leave the question of practice, if any change is needed, to be decided by legislative action. It may be that no harm or injury has resulted in this particular case to appellants; but they had the legal right to prove as they did, that Mrs. Gruber had no interest whatever in the interest in the mine deeded to her by Pollard, or in the damages to be recovered thereon, and to object to her maintaining the suit as to the Pollard interest on that ground, and to rely in support of the objection upon the numerous authorities which without exception declare that such assignments are void as against good policy, and savor of maintenance. This conclusion is based upon the theory that such assignments, if allowed, would have a tendency to encourage

litigation, and lead to improper intermeddling and undue interference in the prosecution of such suits. I am of opinion that, as a general rule, it would lead to such injurious results, and that the reasons given in the decided cases are substantial, wise, and just, and ought to be sustained. Entertaining these views, I concur in the judgment announced by Mr. Justice Murphy.

BELKNAP, J., dissenting.

Caroline Gruber, A. A. Pollard, and Fred Oest owned the Oest mine as tenants in common, and worked it as co-partners. They were engaged in the partnership business for some time prior to the ore discovery, and until the sale to Munckton. The business was unprofitable. The relations of the Bay Brothers, who were Mrs. Gruber's brothers, and who represented her interest in the mine and partnership, were unfriendly with Mr. Oest, the principal owner; and Mrs. Gruber had offered her interest for sale. In this condition of affairs, and on the night of the twentieth of November, 1887, the rich ore was struck. All information of the discovery was withheld from Mrs. Gruber and her brothers and from Pollard, by direction of Oest, for the purpose, as he declared, of getting rid of the Bays. Subsequent explorations made for the purpose of ascertaining the extent and value of the ore body were conducted pursuant to this plan. The rich ore was not mined, but low grade and unprofitable ores were worked for the purpose of discouraging the plaintiff and inducing her to sell. Munckton received early information of the discovery from Oest, and, at his request, from Neighley, the foreman; and defendant Baker, a brother-in-law of Neighley, was allowed to examine the mine, and shown the discovery. Negotiations entered into at first for the purpose of purchasing only Mrs. Gruber's interest resulted in the purchase of her interest and Pollard's as well. A joint deed was made by them to Munckton—Baker's interest being concealed; and afterwards Munckton conveyed to him one-half of the interest acquired. Pollard was the superintendent, but gave little personal attention to the workings of the mine. He and the other owners relied upon the reports of its condition made to them by Neighley, the foreman. During the period between the strike and the sale, and whi'e the negotiations were pending, both Pollard and the plaintiff, by her agent, inquired of Neighley

concerning the condition of the mine.    He stated that no change
had taken place and that there was nothing new to report.
Relying upon these statements, and with no suggestion to the
contrary, plaintiff sold her one quarter interest for four thou-
sand dollars, and Pollard a like interest for two thousand dol-
lars.    The ore discovered yielded in gross one hundred · and
twelve thousand dollars, of which sum, fifty-six thousand dollars
were profits, one-half of which, or twenty-eight thousand dollars,
defendants received.

Leaving out of consideration the acts of Oest, Neighley was
bound to truthfully report to the plaintiff or her agent and to
Pollard.    Instead of stating the truth, he concealed it.    If
Munckton had been ignorant of this concealment and dealt at
arms-length with the sellers, it might well be argued that he
was under no obligation to inform them of the value of their
property.    But it is manifest that he knew of the fact and pur-
pose of the concealment.    Upon this point the learned judge
before whom the cause was tried, says: " But all the evidence
and the circumstances taken together, convince me that Munck-
ton and Baker knew the plaintiff and Pollard had not learned
of the discovery of ore, and knew of the means by which the
knowledge had been kept from them." And again: "Munck-
ton knew of it; and if he had thought that Pollard and the
Bays also knew it (as he certainly would if he did not know to
the contrary,) he would certainly have mentioned it in the
course of the negotiations, defeating the whole scheme." The
discovery greatly enhanced the value of the mine.    It was the
inducement to defendants to purchase, and if the sellers had known
of it they naturally would have used the fact for what it
was worth.    But plaintiff asked no more for her interest than
the price she had offered it at before the strike, and Munckton
conducted his negotiations so as not to disclose the fact of the
discovery.    From these facts the district court must have con-
cluded that Munckton's conduct was inconsistent with igno-
rance of the concealment.    They are sufficient, in connection
with the fact that knowledge of the strike was concealed from
plaintiff and Pollard, and communicated to Munckton, in order
that he might purchase, to support the finding of the district
court upon this point.    The scheme to defraud did not origi-
nate with Munckton.    Others set it on foot and bore a more
active part than he in the perpetration of the fraud, but he

consummated it by purchasing with guilty knowledge of the general plan. He cannot, therefore, retain the avails of the scheme. The decree of the district court directs a cancellation of the deed of conveyance to the defendants, requires a reconveyance, and that they repay to the plaintiff the profits acquired from the mine.

Appellants claim that the measure of damages should have been the difference between the market value of plaintiff's interest and the value she received. In an action at law, when a plaintiff affirms a contract and seeks only damages caused by fraudulent representation, the difference between the actual value and the price paid may afford compensation. But this is not a case of that character. Plaintiff does not affirm, but repudiates, the contract, and seeks a rescission of it. Under the rule invoked, she would receive one thousand dollars damages —that sum being the difference between the price paid and the market value—while the profits upon the ore—amounting, for the one-half interest, to the sum of twenty-eight thousand dollars—would inure to the benefit of the defendants. The injustice of this view is clear, and it is equally clear that the court, in placing the plaintiffs, so far as it could, as if no fraud had been practiced, adopted the only rule of damages that could afford adequate relief.

Objection was taken that Adam Bay was not made a party plaintiff. Appellants urge that he was the real owner of a one-quarter interest in the mine, standing in the name of the plaintiff at the time of the sale; that, although the legal title was in the plaintiff, she was in fact a mortgagee. I will not consider the testimony upon this point. Defendant Munckton had purchased his interest and that of Baker from her, and was in possession under her deed. They were, therefore, estopped to deny her title. This view renders it unnecessary to consider the objection to the ruling of the court excluding the testimony of Mr. James A. Stephens, the attorney who drew the deed from Adam Bay to Mrs. Gruber, and by whom defendants offered to show that it was intended as a mortgage.

Further objection is made to the character of proof by which plaintiff's case was established. Neighley, the foreman above mentioned, and who actively participated in the perpetration of the fraud, was plaintiff's principal witness, and as such detailed the means by which the fraud was accomplished. It is said

that he stood before the court precisely as an accomplice in crime who confesses his own participation in it. Concede this, and yet upon all material points the testimony of the witness was corroborated.

Appellants also contend that the transfer by Pollard to Mrs. Gruber was simply the transfer of a law-suit, and is void as savoring of maintenance. Maintenance is defined by Blackstone as " an officious intermeddling in a suit that no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it." And champerty is defined as " a species of maintenance, * * * being a bargain with a plaintiff or defendant *campum partire*, to divide the land or other matter sued for between them if they prevail at law." (4 Bl. Comm. 134.) " The doctrine of the common law as to champerty and maintenance," says Judge Story, " is to be understood with proper limitations and qualifications, and cannot be applied to a person having an interest, or believing that he has an interest, in the subject in dispute, and *bona fide* acting in the suit, for he may lawfully assist in the defense or maintenance of that suit." (2 Story Eq. Jur., Sec. 1048*a*.) Applying these principles to the facts, the agreement between Pollard and Mrs. Gruber does not come within the rules of maintenance, nor within the reason of laws upon that subject. Each had an equal interest in the mine, and had alienated it under a similar state of facts. If either had brought suit to annul his or her deed, the other had such interest in the subject of the litigation as would sustain an agreement for the prosecution of the suit. (*Call* v. *Calef,* 13 Metc. 362; *Finden* v. *Parker,* 11 Mees. & W. 675.) And, in order that relief for both could be· obtained by one suit, Pollard conveyed to Mrs. Gruber. This tended to reduce the expenses of the litigation, and could not have prejudiced appellants. There is an entire absence of officious intermeddling by maintaining or assisting another to prosecute the suit; · the agreement expressly providing that they shall divide the expenses of the litigation—in other words, each shall pay in proportion to his or her interest.

The case of *Prosser* v. *Edmonds,* 1 Younge & C. 481, is relied upon by appellants in support of their contention. In that case a debtor had been fraudulently induced to make certain deeds of conveyance. Subsequent creditors, to whom the debtor afterwards assigned his interest in the property, brought

a suit in equity to annul the first conveyance. The debtor made no complaint, and refused to be made a party plaintiff to the suit. It was held that the second assignment could not be sustained. The distinction between that case and this is, there the debtor made no complaint; here the transferrer is, in effect, a suitor maintaining his share of the expenses of the suit. The class of cases to which *Prosser* v. *Edmonds* belongs, holds that an assignment or transfer will not be upheld when it is, in effect, the transfer of a law-suit to be prosecuted at the expense of the assignee, or transferree. The decisions are placed upon two grounds: (1) that such transactions involve the offenses of maintenance or champerty, or lead to their mischievous consequences, and are, therefore, repugnant to the policy of the laws upon these subjects; and (2) they are contrary to the common law, which forbade the transfer of a disputed title to real property by a party out of possession, upon the principle that such transfers savored of maintenance. As to the first ground, the agreement set forth involves none of the ingredients of the offenses named, and, as to the second, a statute of this state expressly permits the transfer interdicted by the common law. (Gen. Stat. 2603.) The reasons, therefore, which have required courts to disregard the transfer of disputed rights do not exist in the present case. I will not consider whether plaintiff is the real party in interest within the meaning of section 4 of the civil practice act, as this ground was not relied upon by appellants. As opposed, however, to the view expressed in the opinion of Mr. Justice Murphy, Prof. Bliss, in discussing similar statutes requiring action to be brought in the name of the real party in interest, says most of the courts have held that, in actions brought by the transferree it does not concern the defendant for what purpose the transfer was made, and he cannot object unless he has some defense, or holds some claim, against the real owner. (Bliss Code Pl., Sec. 51.) I think the judgment should be affirmed in all respects.