Smith et al. v. Harris et al.

SMITH and WADE, Respondents, *v.* H. A. HARRIS *et al.*, Appellants.

| 43 | 557 |
| 104 | 191 |
| 43 | 557 |
| 117 | 291 |
| 43 | 557 |
| 120 | 58 |
| 43 | 557 |
| 64a | 185 |
| 43 | 557 |
| 154 | 412 |
| 154 | 413 |

1. *Equity—Action to enjoin recovery in ejectment—Fraud—Prior possession.*—A., the owner of certain real estate, many years after its purchase, discovered that the acknowledgment of the conveyance by the original grantor was defective, and procured from B., his only heir, a quit-claim deed of the property. Shortly prior to the date of said deed, C., by false inducements, had obtained from B. another deed of quit-claim for the same property, and, some time after the making of the deeds, brought suit of ejectment against A. In an action to enjoin a recovery of C. in the ejectment suit, in consequence of such fraud: *held*, that A., as well as B., could properly institute proceedings in the injunction.

2. *Equity—Assignment of naked right to property—Prior possession.*—Although the grantor of real estate who was entitled to have the conveyance set aside for fraud, cannot assign his naked right of action in order that his assignee may sue in his own name, yet where the right of the assignee to the property did not depend alone upon the assignment, but his purchase, interest, and possession were long antecedent thereto, and the taking a deed from the assignor was only a step to protect that purchase, the grantor may proceed in his own name by injunction.

3. *Practice, Civil—Practice act of 1849—Decision of court on question of fact, informalities in.*—In a decision on trial of a question of fact by the court, under the statute of 1849 (Laws 1849, p. 90), where the facts are fully found, and judgment is given and is a necessary result of the facts, the judgment is not invalidated by reason of an informality in the order of statement of the facts and the conclusions of law.

4. *Practice, Civil—Practice act of 1849—"Case made" by applicant for review, what sufficient.*—Under the law of 1849 (Laws 1849, p. 90), the requirement to "make a case" is necessary for the purpose only of bringing up a matter for review; and when "so much of the evidence as may be material to the question" is brought up, accompanying the motion for review, the rule is satisfied, and it is immaterial whether the application be called "a motion for new trial and application for review," accompanied by the evidence, or a case containing the evidence.

36—VOL. XLIII.

*Appeal from St. Louis Circuit Court.*

*Dryden & Lindley*, and *Jno. E. Jones*, for appellant.

I. The facts found by the court do not warrant the judgment in the case.  1. It was a principle of the common law that a fraud could only be avoided by him who had a prior interest in the estate affected by the fraud, and not by him who subsequently to the fraud acquired an interest in the estate.  (Upton v. Bassett, Cro., Eliz. 445, 3 Co. 83, *a ;* French v. Shottwell, 5 Johns. Ch. 566.)  2. The bare right to file a bill in equity to set aside a conveyance for fraud  is not assignable at law or in equity, and therefore the assignee of such right cannot sue.  (Grosser v. Edmonds, 1 You. & Col. 481–500 ; McMahon v. Allen, 34 Barb. 56 ; Morrison v. Deaderick, 10 Humph. 342.)

II. It is the duty of the court to find the issues ; and its failure to do so is a ground of reversal.  (Downing v. Bourlier, 21 Mo. 149 ; Marmaduke v. McMasters, 24 Mo. 51 ; Prac. Act 1849, art. XV, § 2.)

*Green & Reese*, and *Ewing & Holliday*, for respondents.

I. Where the pretended title on which the action of ejectment is founded is obtained by fraud, the plaintiff in ejectment will be restrained from further proceedings at law.  (Gaines v. Nicholson, 9 How. 356–364 ; 1 Eden Injunc. 27, 28, and notes ; Newland on Cont. ch. 22, p. 365 ; 1 Bibb, 168, 406 ; 3 How. 82 ; Johnson v. Medlicott, 3 P. Will. 130, n. *a ;* Freeland v. Eldridge, 9 Mo. 325, 327.)

II. The only question presented by the record for the decision of this court is whether the finding supports the decree.  Either party desiring a review upon the evidence appearing upon the trial, either of question of law or fact, may apply to the court for that purpose, and make a case containing so much of the evidence as may be material to the question to be raised.  (Prac. Act, art. XV, §§ 2, 3, Laws 1849, p. 90.)  Appellant made no case for review ; his application does not set forth the grounds on which he wishes a review, and the fact or facts he wishes

found in a different manner; nor does it set forth the evidence upon any point he wishes reviewed. (Skinner v. Ellington, 15 Mo. 488 ; Giboney v. Bedford *et al.*, 17 Mo. 58 ; 33 Mo. 229.) There being no case made for review, the only. question is whether the finding supports the judgment. (See the authorities before cited, and 29 Mo. 443.) And that it does, cannot, we think, admit of argument.

BLISS, Judge, delivered the opinion of the court.

The respondents file their petition to enjoin a recovery by the appellant in an action in ejectment. In 1853 defendant Harris brought ejectment in the Ralls Circuit Court for possession of lands known as the White House tract, and in 1854 the plaintiffs presented their petition. By two changes of venue the case was transferred to St. Louis county, where the petition was sustained and the injunction made perpetual; and Harris appeals to this court. Both parties claim through Mary Cameron, wife of Neil Cameron; and the respondents show chain of. title embracing a deed, of May, 1842, from Neil and Mary Cameron, of her land to B. F. McMahan, for $1,800, its full value and over; that in June of the same year the plaintiffs purchased of McMahan, and have been in possession ever since. The petition also shows that in 1852 it was discovered that the acknowledgment of the deed from Mary Cameron, then dead, was defective; that, while she executed the deed, the acknowledgment only certified that she relinquished her dower; that they applied to defendant, Philip D. West, only son and heir of Mrs. Cameron, in relation to his claim to the land, who disclaimed any right to it; that about the same time defendant Harris discovered the defect, and applied to West to purchase his right to the land, who disclaimed any right to it, saying that his mother had sold it for its full value; that afterward Harris laid a plan to deceive West, and induced him, on the 10th of December, 1852, to execute to Harris a quit-claim deed of the premises, by pretending that he was purchasing for one Gray, of Virginia, who was buying the land of plaintiffs, and, being a very particular man, wanted to remove all shadow from the title; and that West, supposing that he was perfecting

the title of his mother, and for that purpose, executed his quit-claim deed for the consideration of thirty dollars. Afterward, on the 31st of March, 1853, West quit-claimed to Neil Cameron, the original grantor, making the plaintiffs' title good but for his quit-claim to Harris.

Defendant Harris denies the fraud, and says that, in addition to the thirty dollars, he gave to West a bond for $500, conditioned upon this recovery of the lands. West, answering, admits the allegations of the petition.

Defendant Harris raises a question of the right of the petitioner to proceed against him, which it is necessary first to consider. Though West might have complained of the fraud, his assignee, it is claimed, cannot; that rights of this kind are not assignable, and, even if they were, West only quit-claimed his interest in the land, whatever it might be, and not his right to prosecute for fraud. We have examined the numerous cases cited in support of these positions, and do not think they apply to the case at bar.

The plaintiffs have been in possession of the land in controversy for many years as owners, with title deeds from those who had a right to make them; and but for an informality in the acknowledgment of her deed by the ancestor of West, who had received full payment for the land, and supposed she had effectually sold it, their title would have been complete. They charge that West always acknowledged the fairness of the sale by his mother, and made no claim to the property sold by her; that by fraud and deception the defendant obtained a conveyance from him—he being led to suppose that he was acting like an honest man in perfecting his mother's title, instead of creating an adverse one; and when the fraud was discovered, in order to remedy the defect in his mother's acknowledgment and vest in them in form what before was plainly and honestly theirs, he conveys to their grantor whatever interest he might have in the property, thus making good a link in the chain likely to break in a test of strength. As original honest purchasers in constant possession, it would seem that our law was manifestly defective if they have no power to expose the trick charged to have been played upon West. They had a right to rely upon his honesty to prevent him from setting up

a claim to the land. And if it should appear that this confidence was not misplaced; that, while intending to act truly to them, through the arts of another he was led unwittingly to give him the power to disturb a possession he himself always respected; and that, after the discovery of the trick, he proceeded to perfect the title—to do formally what he always intended to do in effect, by doing nothing to disturb them till possession itself had perfected the title—if, after all this should appear, these purchasers can have no remedy, cannot avail themselves of their own and West's blended equities to protect themselves against fraud, then it would seem our jurisprudence has not obtained its desirable perfection. It is claimed that West is the one to take advantage of the fraud upon him. So he is if he would, or if he claimed the property, but he cannot be compelled to involve himself in an expensive law suit for plaintiffs' benefit. Making no claim himself, he will not sue, but will do what he can to perfect the title of those who, if the allegations are true, have the highest equity.

In McMahon v. Allen, 24 Barb. 56, it is held that one who has conveyed real estate, and who was entitled to have the conveyance set aside for fraud, cannot so assign his naked right of action that his assignee may sue in his own name — that the conveyance is voidable, not void, and that the right to avoid it is not an assignable chose in action. But in this case the grantee by the conveyance had taken possession of the premises, and the assignee of the grantor was a stranger, having no interest whatever except by the assignment. In the case at bar, the fraud as charged and found below is chiefly against the plaintiffs, who now hold and always have held the possession, which the grantee of West has never been able to obtain. West, claiming no right, has suffered no injury. Plaintiffs are alone injured by the fraud.

French et al. v. Shotwell, 5 Johns. Ch. 555, cited by defendant, is also unlike the present case. The grantor had confessed judgment upon a consideration effected by usury, extortion, etc., and, before selling to the petitioner, had filed his bill to set aside the judgment, but the matter was compromised and the judgment allowed to remain. The grantee bought the land, knowing the judgment and its lien upon it, and the court held that he could

not impeach the judgment, and that even his grantee had put it out of his power to do so. The Chancellor refers to Upton v. Bassett, Cro., Eliz. 445, also cited by this defendant, where the judges state that it is "a principle of the common law that a fraud could only be avoided by him who had a prior interest in the estate to be affected by the fraud, and not by him who subsequently to the fraud acquired an interest in the estate." The very gist of the action in the case at bar, as is seen, is the prior purchase and possession of the property affected by the fraud.

It has always been held that the assignment of a bare right to file a bill in equity for fraud upon the assignor is void, as against public policy, and savoring of the character of maintenance. (Sto. Eq. 1040; Prosser v. Edwards, 1 You. & Coll. 481; Morrison v. Deaderick, 10 Humph. 342.)

The case now under consideration does not, as we have seen, fall under the class of cases cited by the appellant. The plaintiffs' right to the property does not depend alone upon the assignment by West. Their purchase, their interest, their possession, were long antecedent to it. The taking a deed from him is not an original purchase, but only a step to protect that purchase, and they should be able to avail themselves of any fraud that renders the deed to Harris invalid.

Defendant objects to the form of the decision of the Circuit Court — first, because the court failed to find upon all the issues; and second, because in giving his decision, after stating the facts, the judge did not join "the conclusions of law upon them," as required by the code of 1849. It was clearly the duty of the judge to find upon all the material issues. (Downing v. Bourlier, 21 Mo. 149.) The specific defect pointed out is that the court did not find whether the $500 bond was or was not a consideration for the deed of West to Harris. The petition charged that the consideration of the deed was thirty dollars, and the answer alleged that it was the $500 bond in addition. Upon this issue the court finds that the said West "did on said day execute to said Harris a quit-claim deed to all of said lands for a consideration of thirty dollars, paid by said Harris to said Philip D. West, and a further pretended consideration of a bond of $500,

conditioned to be payable only if said Harris should recover possession of all the lands conveyed to him by said Philip D. West, inclusive of the forty acres bought by Cameron of Pettis, and conveyed by Cameron to McMahan, to which forty-acre tract the said Philip D. West had no actual or pretended title whatever." The only just criticism of this part of the finding is that it is more particular than is necessary. The thirty dollars is found to be the only real consideration; the $500 bond only a sham, as containing an impossible condition. The objection that no " conclusion of law upon" the facts is given, is not without foundation. Such conclusion is not an abstract proposition—as " that deeds obtained by deception and fraud, and without consideration, are voidable," etc. — but some logical and legal conclusion from the facts found. I find, both in the statement of facts and in the judgment, what might be called a conclusion, but it is nowhere formally stated. To comply with the letter of the statute it should follow the statement of facts as a conclusion, and such I find is the practice in New York upon motions for review. The conclusion of law in this case was that the deed from West to Harris, upon which the ejectment suit is based, was obtained by fraud and should be annulled, and that the plaintiffs are entitled to avail themselves of the fraud. The circumstances that constitute the fraud, and the relations of the plaintiffs to the land and to West, are the facts to be found. Instead of giving this conclusion as such at the close of the statement of facts and upon the judgment, the court, after detailing the facts constituting the fraud, says: " And the court finds the fact that the deed so acquired by said Harris of said West was acquired by fraud and deception practiced by said Harris on said West"— a clear conclusion of law instead of a statement of facts; and then follows the statement of the act of West curing the title from his mother, and of the institution of the ejectment suit, without any further declaration of law.

Does this informality invalidate the judgment? We think not. The facts are fully found. The judgment is given, and is a necessary result of the facts. The " conclusion of law," for a few years only by our practice required to be given, is informally

and imperfectly stated. I find no decision or rule of court upon the subject. We did not live long enough under act 15 of the code of 1849 to settle the practice, and the question is no longer a living one. But this court has never been in the habit of reversing judgments for informality merely. It would be wrong to do it in this case.

The only question to be determined pertains to the correctness of the findings of the court. The plaintiffs' counsel objects to the consideration of the evidence, because not properly brought before us by the application for review. We think he is in error. The suit, as we have seen, was commenced under the practice act of 1849. By that act all issues of fact seem to have been triable alone by jury, unless expressly submitted to the court. The distinction between trials of issues at law and in equity was abolished; and though that distinction is revived by the provisions of sections 12 and 13, chapter 169, of the General Statutes, so far as this case is concerned we must treat it as not existing. The facts in issue do not, then, come before us, although the action is equitable, unless brought here according to the provisions of the act of 1849. That act provided that, upon a trial of a question of fact by the court, its decision should be given in writing, and "that the facts should be first stated, and then the conclusions of law upon them;" * * * "and either party desiring a review upon the evidence appearing upon the trial, either of question of law or of fact, may apply to the court for that purpose, and make a case containing so much of the evidence as may be material to the question to be raised." This application does not "make a case," it is claimed, containing the evidence. If not, it has been held in several cases that this court will only examine the findings of the court below and see whether they support the judgment. (Skinner v. Ellington, 15 Mo. 488; Giboney v. Bedford, 17 Mo. 56; Blanchard v. Baker, 29 Mo. 56; Thompson v. Lyon, 33 Mo. 219.)

This requirement to "make a case" was copied from the New York Code, and is necessary for the purpose only of bringing up a matter for review. This case may not be made precisely as is the practice there, but "so much of the evidence as may be

material to the question" is certainly brought up accompanying the motion, and it is not material whether the application be called "a motion for new trial and application for review," accompanied by the evidence, or a case containing the evidence. Defendant has brought the whole matter before us—the evidence, the findings of the court, and the judgment—and asks specifically for a review.

We have fully examined the evidence. The testimony upon some points is contradictory, but on the whole the evidence sustains the findings of the court. There is no doubt whatever as to the fraud upon West, if he is to be considered as claiming the property for himself. The deceptions practiced upon him, the advantages taken of his propensity to drink, and the gross inadequacy of the consideration for the land, are conclusive upon that point. Nor is there any doubt of the purchase and long occupancy by the plaintiffs ; but there is some doubt as to their relations to West, of his determination to make no claim to the land for himself, and his desire to protect them — a matter not prominently in issue, and important only as bearing upon the right of the plaintiffs to complain of the fraud. But his own express testimony to that effect—his long acquiescence in the possession of the property by the plaintiffs, which, of itself, would soon have perfected their title — his uniform respect for their rights, except when under the manipulations of Harris — more than offset his wild talk when intoxicated, and the part he was made to play by his manipulator. We think the plaintiffs are clearly entitled to a perpetual injunction, and the judgment of the Circuit Court is affirmed. The other judges concur.