MATHIAS WEISSENFELS v. LEWIS R. CABLE, Appellant.

Division One, December 24, 1907.

1. **DEED: Fraudulent: Right of Action.** The right of action on a fraud is not vendible. The right to sue to set aside a deed to defendant as being a fraud on the grantor is in the grantor, remains in him, and does not pass by a subsequent special warranty to plaintiff, the grantee of an adjoining tract, where such subsequent grantee had no prior, independent, equitable right in the land embraced in the deed which he insists was a fraud on the grantor.

2. ———: ———: **Proof.** Where the owner of land was not misled by false suggestion or suppression of the truth his deed cannot be set aside as being the result of fraud practiced on him.

Weissenfels v. Cable.

3. ———: **Evidence of Intent and Purpose.** In the absence of mutual mistake or fraud and deceit and of any ambiguity in a deed, evidence of what the grantor's purpose and intent in making a deed were, is not competent. Where the deed conveys all the part of a forty-acre tract lying west of a river or creek, testimony in ejectment that he intended to convey also two small pieces lying east of the creek, is incompetent.

4. ———: **Small Consideration.** A small consideration of two dollars for a quitclaim deed to a small tract of land, and of one dollar for a subsequent special warranty of the same tract to another grantee, did not, in either case, vitiate the deed.

5. ———: **Quitclaim.** For the purpose of transferring the title a quitclaim is as effective as any other deed, barring outstanding equities, not the subject of record, and barring recourse on covenants of warranty.

6. ———: **Mistake.** A mistake furnishing ground for equitable interference, such as the setting aside of a deed, must be a mutual mistake of fact.

7. ———: ———: **Amending Pleading.** And where there is no evidence of mutual mistake, an amendment to the petition, after the evidence is in, should not be allowed.

Appeal from Jackson Circuit Court.—*Hon. A. F. Evans*, Judge.

REVERSED AND REMANDED (*with directions*).

*Edward P. Garnett* for appellant.

(1) The quitclaim deed was as effectual to convey the title as a warranty deed. It only differs from a warranty deed in affecting the liability of the grantor on his covenants. Chew v. Keller, 171 Mo. 225; Bartlett v. Brown, 121 Mo. 353; Munson v. Ensor, 94 Mo. 504. (2) The quitclaim deed from Boone to defendant vested in him the absolute title to the property in question, and the subsequent deed from Boone to plaintiff could not possibly affect the title of defendant, as he "was in no wise a party thereto, and that deed could not possibly affect rights created in

him by said first-named deed." Christ v. Kuehne, 172 Mo. 124; Hope v. Blair, 105 Mo. 95; Munsen v. Ensor, 94 Mo. 504; Elliott v. Buffington, 149 Mo. 663; Bartlett v. Brown, 121 Mo. 353. (3) The fact that Cable paid only $2 and expenses of Boone as a consideration does not invalidate the deed. "If there is a valuable consideration, no matter how trivial or inadequate, the conveyance is not voluntary." A grant cannot be defeated by showing inadequate consideration. Edwin v. Latimer, 183 Mo. 626; Gentry v. Field, 143 Mo. 410; Henderson v. Henderson, 13 Mo. 157; Bobb v. Bobb, 89 Mo. 419; Dobyns v. Beneficiary Assn., 144 Mo. 109; Wishart v. Gerhart, 105 Mo. App. 112; Hickman v. Hickman, 55 Mo. App. 311; Jackson v. Railroad, 54 Mo. App. 636; Winton v. Railroad, 160 Mo. 176. (4) The deed from Boone to Cable vested in him an absolutely perfect title to the tract of land in controversy, and this title will remain in Cable until that deed is cancelled or set aside on the grounds of fraud or mistake. It is well-settled law that before a court of equity will cancel, set aside or change a deed duly executed according to the forms of law, on the grounds of fraud or mistake, the evidence of such must not only be clear, cogent and convincing, but must be of such a character as to satisfy the minds of the court beyond any sort of doubt that the mistake has been made or the fraud perpetrated. Hall v. Small, 178 Mo. 634; Parker v. Vanhoozer, 142 Mo. 621; Fanning v. Doan, 139 Mo. 392; Judson v. Mullerex, 145 Mo. 630; Brinkman v. Sunken, 174 Mo. 709; Turner v. Shaw, 96 Mo. 22; Dickson v. Railroad, 168 Mo. 90; Bartlett v. Brown, 121 Mo. 353; Benn v. Pritchett, 163 Mo. 560; Sweet v. Owen, 109 Mo. 1.

*Scarritt, Scarritt & Jones* for respondent.

LAMM, J.—In September, 1904, plaintiff brought suit in the circuit court of Jackson county having for

its object to ascertain and determine the estate, title and interest of plaintiff and defendant, respectively, in certain parcels or tracts of land, all included in the general description of southeast quarter of the northeast quarter of section 28, township 48, range 33, in said county, and to define and adjudge such title, estate and interest.    Judgment went for plaintiff and defendant appeals.

The petition alleges that plaintiff is the owner and in possession of 32.71 acres, being all of the aforesaid forty-acre tract except six acres (hereinafter called tract A) in the southeast corner, described as follows: Beginning at the southeast corner of said quarter-quarter section, thence north along the east section line 38 poles, thence west 25.5 poles, thence south 38 poles to the south line of said quarter-quarter section, and thence east 25.5 poles to the beginning; and except 1.29 acres (hereinafter called tract B) on the west side of the said quarter-quarter section sold to a certain railroad company for a right of way.

The answer follows:

"Defendant for answer to plaintiff's petition denies each and every allegation in said petition contained, except as hereinafter stated.

"For further answer the defendant says that he is the owner and is in possession of the following portion of the land described in plaintiff's petition, that is to say, the following described real estate in Jackson county, Missouri, to-wit:

"All that part of the southeast quarter of the northeast quarter of section 28, township 48, range 33, which lies east and south of the Big Blue River; and that the plaintiff is not now and never has been in possession of this portion of said tract of land and that plaintiff has no right, title or interest therein.

"Further answering the defendant says that he does not claim any right, title and interest in the re-

maining portion of the land described in plaintiff's pe-
tition and has never    asserted    any    claim    thereto.
Wherefore defendant having fully answered asks to
be discharged with his costs.''

The reply denies the allegations of new matter in
the answer.

By diagrams and descriptions in the testimony,
it is possible to construct a crude map, serving a use-
ful purpose, thus:

<em>Plat of S. E. N. E. 28-48-33.</em>

Let B O M G represent the S. E. N. E. of 28-48-33. Let X Y represent the railroad track. Then the land included in the adjacent parallel lines will be the right of way, tract B. Let B F P D represent the six acres excepted, to-wit, tract A.    Let C L K J H A represent the meandering channel of Big Blue River. Then the little tracts shown on the map, to-wit, 1, 2 and 3 (lettered C F L, K D J, and H A G, respectively), together with all of tract A lying east of the Blue, represent the land claimed by defendant; while the whole S. E. N. E., less tracts A and B, represents the land claimed by the plaintiff.    The bone of contention is over the little irregular tracts, 1, 2 and 3, said to contain less than two acres.

It is agreed on all hands that Morgan Boone, Sr., is the common source of title; that he died in 1851; and that Morgan Boone, Jr., is his sole heir.    That defendant is in possession and has fenced all of said southeast quarter of the northeast quarter lying east of the Big Blue, has cleared some or all of it, and put some of it ready for the plow.    There has, however, been no such length of possession as would ripen it into a title by the Statute of Limitations.

The plaintiff, to show title in himself, introduced record evidence, as follows:

(1)    A warranty deed from Morgan Boone, Jr., and wife, to R. B. Garnett; of date December 14, 1888, of record December 21, 1888, consideration $1962.60, and conveying part of said forty-acre tract, to-wit, "All that portion of the southeast quarter of the northeast quarter of section 28, township 48, range 33, *lying on the west side of the Big Blue River,* (excepting tract B) "which leaves the amount of land hereby conveyed, more or less, 32.71 acres."    This deed is recorded in Book B 330, at page 458.

(2)    Also a warranty deed from said Garnett to one Bernard; dated September 21, 1888, recorded

the same day, and conveying the same property by the same description.

(3) Also a warranty deed from said Bernard to plaintiff; of date August 28, 1901, duly of record, consideration $2,500, and conveying the same property by the same description.

(4) Also a quitclaim deed from said Bernard to plaintiff; of date January 30, 1904, of record February 5, 1904 (no consideration disclosed), and conveying "all of the southeast quarter of the northeast quarter of section 28, township 48, range 33, except six acres in the southeast corner thereof." This conveyance has in it the following narration: "This deed is meant to correct the description in a warranty deed to the same parties conveying the same property."

(5) And also a conveyance called a "special warranty deed" from Morgan Boone, Jr., to plaintiff; of date April 15, 1904, acknowledged September 21 and put of record September 22 of the same year, consideration $1, and conveying said quarter-quarter section, except tracts A and B. This conveyance contains the following narration: "Containing 32.71 acres, more or less. This deed is made to correct a description of a deed from the grantor herein, Morgan Boone, to R. B. Garnett, date September 14, 1888, in Book 'B' 330, at page 458, of the recorder's office of said county, in which deed grantor intended to convey all said quarter-quarter section, except six acres thereof sold off at the southeast corner, and the 1.29 acres in the railroad right of way."

(6) The plaintiff (possibly a misprint for defendant) offered in evidence the files and decree in a suit of Thomas Lea, Plaintiff, vs. Morgan Boone et al., Defendants. The abstract shows this was a suit to compel the conveyance of real estate. Attached to the petition was the following receipt:

"Received March 28, 1851, of Thomas Lea, $45

as a payment toward the land I sold to him on the east side of Big Blue, being a portion of township 48, range 33, and a part of the same land I purchased of John Maxwell as the agent and attorney of Lemuel Edwards, containing by estimation about six or seven acres which I sold to said Lea for $7 per acre.

"Witness my hand the date above.

"MORGAN BOONE."

It seems that Morgan Boone, Sr., died before making a deed, and that the suit culminated in a decree (date not disclosed) investing Thomas Lea with title to tract A, except that the north boundary line is 26 ½ poles instead of 25½ poles.

It was next admitted that the title of said Lea vested in the grantors of defendant.

The foregoing record proofs were supplemented by evidence from the assessor's books of Jackson county, tending to show that from 1851 down to 1887 the quarter-quarter section in question was assessed in the following descriptions: "Morgan Boone, 34 acres, SE NE, ex. 6 a. SE cor. Sec. 28, T. 48, R. 33; and D. Taylor 6 a. SE cor. SE NE, Sec. 28, T. 48, R. 33."

It was further supplemented by oral testimony, referred to further on.

To sustain his defense, defendant put in evidence conveyances as follows: (1) A warranty deed from Taylor *et al.* (grantees of said Thomas Lea) to defendant, dated April 28, 1902, conveying, with other lands, tract A by metes and bounds.

(2)   Also a quitclaim deed from Morgan Boone, Jr., and wife to defendant, duly acknowledged and dated February 15, 1904, put of record February 18 of the same year, consideration $2, and conveying "all of that part of the southeast quarter of the northeast quarter of section 28, township 48, range 33, which lies east and south of the Big Blue River."

Defendant put in evidence assessments since 1888

showing that the SE NE was divided for assessment purposes into a tract lying north of the Big Blue River, assessed to Bernard, and one lying south of the Big Blue River assessed first to Taylor and then to defendant.

To further sustain the issues on his part, plaintiff went upon the stand as a witness, and also introduced the deposition of Morgan Boone, Jr.

By Morgan Boone, Jr., testimony was introduced tending to show in chief that he was the only heir of his father, who died three months before he was born; that he sold some land in the SE NE to R. B. Garnett in 1888, understanding at the time that his father had sold something like six acres off of the forty-acre tract before; that he had paid taxes on thirty-four acres until he sold 1.29 acres to a railroad company, and thereafter paid on 32.71 acres; that after the sale to Garnett he claimed to have no interest in the SE NE. His *purpose* in making the deed to Garnett he indicated this way: "Well, I aimed to deed him the 32.71 acres that remained of the forty acres. . . . Well, what I owned there, with the exception of the railroad property and what had been sold off on the southeast side of the creek by my father."

At this point in his deposition his testimony was objected to because "the deed is the best evidence and his purpose could not vary description in deed." The record shows the court's attention was called to this and other objections in the deposition (noted hereafter), but it seems no ruling was made on them. Continuing, witness testified he did not know the exact location of the line of the six acres. He said: "I always had supposed that the creek was the line;" had no idea there was any of the six acres on the west side. Over the objections of defendant's attorney that "his intention could not change the description in the deed" (not ruled on by the court) he

testified that he intended to sell to Mr. Garnett all he had in that quarter-quarter section, except the six acres and the railroad tract. Since he made the Garnett deed he had no possession or control of any part of the SE NE. Having heard that Mr. Garnett did not buy the property for himself but straightway deeded it to Mr. Bernard, he joked with him about making two deeds when one would have done.

On cross-examination, Mr. Boone said the negotiations leading up to the sale to Garnett were altogether with him; that the trade was talked over and Garnett seemed to know the land and witness did not go over the land with him; that at the time witness thought all that he owned in the SE NE was on the west side of the Blue River; that the negotiations were directed only to selling land on the west side of the Blue; that the land on the west side of the Blue was the only tract he sold to Garnett—that was witness's understanding. "Q. And you did not sell him anything on the other side of the creek? A. No, sir. Q. You did not attempt to sell anything on the other side? A. No. There was nothing said about any of it being on the other side of the creek." The deed itself called for all the land on the west side of the Blue. Witness read the deed before he signed it. Garnett wrote into the deed the number of acres, and added the words "more or less." Witness understood that to mean that if there was more land on the west side of the Blue than 32.71 acres, Garnett got it; and if there was less, he would simply get what was on the west side—quarter-quarter sections sometimes overrun. Witness supposed the center of the creek was the line. The abstract on which he sold did not contain the record of the six acres. Witness had always understood that all the land he owned after selling the six acres was on the west side, and

had never understood differently until the controversy came up between plaintiff and defendant.

Referring to the quitclaim deed made to defendant in February, 1904, witness said Mr. Cable "claimed that he did not have a good title over there and that it (said deed) would perfect his title." Up to that time, witness "understood" and "always thought" that the six acres covered the land east of the Blue, and that the owners of that tract claimed all on the east side. The Blue had been recognized as the line ever since witness could remember. The creek ran in such a shape that if he (witness) had anything over there, he never thought it worth anything; he claimed nothing there; he knew nothing about the shape of the six acres; he had seen Weissenfels working on the west side of the Blue and cultivating up to the Blue, where it could be cultivated.

On re-direct examination, witness reiterated that in 1888 he was "aiming" to sell Garnett all the land he had left in the SE NE. He further said that when he made his quitclaim deed to defendant in 1904, defendant brought him an abstract, but he did not take the pains to look it up. He did not think it necessary because he knew what defendant wanted; he wanted to "better his title," and witness "intended to deed to him what he thought belonged to him." Over the objection that it was not competent to contradict a deed by parol evidence of grantor's intention in making it, he was allowed to testify that he did not intend to convey to defendant any land not already deeded to him or his predecessors in title. Continuing, he said that defendant paid him $2, his expenses in coming to Kansas City; that there was nothing paid for the land. He did not understand that any of the six acres was west of the Blue; and, over the objection "that parol testimony is inadmissible to contradict or vary the terms of a deed," he was allowed to testify

that he did not intend to let either of his grantees have any of the other's land.     There was testimony from him also that the Big Blue is a fishing stream and many fishermen resort there.

On re-cross-examination, witness reiterated that defendant, when he came to negotiate with him about the quitclaim in February, 1904, brought an abstract, and that he (witness) came to town to make the deed something like a week afterwards; that it was made to perfect Cable's title on the east and south of the Blue, and witness intended to make it out that way and did not know at that time he owned any land on the east of the Blue; that when he made the original deed to Garnett he intended to convey to him all the land he owned west of the Blue; that there was no mistake made in the Garnett deed; he also testified: ''I intended to convey to him all that I had.''   But on being questioned whether there was anything said to him at the time of the Garnett trade about conveying all that he had there, he testified it was a *supposition* of his only, he did not know there was anything said about that.    He further testified Mr. Garnett was an attorney, had been for years, and that he (Garnett) got up the abstract to the land, and traded around in real estate in that neighborhood.

Defendant introduced R. B. Garnett as a witness, who testified that he had experience as a real estate lawyer for twenty-five years, and at one time conducted a set of abstract books; that he prepared the deed from Boone to himself—either he or Mr. Bernard, his partner, did; that the negotiation in regard to the purchase had reference to a tract of land bounded on the east side by the Blue; that he only bought the piece on the west side; never intended to buy any on the east side; never knew Mr. Boone owned any there; that one Corder acted as agent for Mr. Boone; that there was very little negotiation, since witness had

the tract on his abstract books and knew about the land in that way. Witness was of the opinion that he had never talked with Mr. Boone, and negotiated entirely with Mr. Corder. The deed he got from Boone correctly described the land he bought.

On cross-examination, witness said Mr. Boone was in Saline county at the time, living there on a farm, and that he may have talked with him after the transaction. On the same day he got the deed from Boone he deeded it to his partner; had agreed with him to take the land before he got the deed, in order to get rid of a horse and buggy witness owned. That was all witness had in the transaction, to-wit, the sale of his horse and buggy. Witness executed a mortgage on the land for part of the purchase price, Bernard taking title subject to said mortgage. Referring to the consideration in his deed, to-wit, $1,962.60, and to the number of acres, to-wit, 32.71, witness said he expected they arrived at the total consideration by multiplying the number of acres by $60. His recollection was that they had a surveyor's plat when they wrote the deed and the plat showed the number of acres, after deducting the six acres and the railroad right of way.

On re-direct examination, he testified that the surveyor's plat did not show any land east of the Blue. Witness had an abstract and the abstract showed Boone's land only on the west side of the Blue.

On re-cross examination, he said he did not pay much attention to the plat; didn't know whether the administrator's deed to Lea for the six-acre tract was shown on the abstract, and didn't examine the abstract as an attorney.

By Mr. Donnell, defendant put in evidence tending to show that he knew the land for twenty years; that it was wild, and after the heavy timber was cut off it grew up in underbrush. In a negotiation between him and Mr. Boone relating to the purchase of

the SE NE witness broke the negotiations off and refused to buy because he could not get the land on the east side of the Blue.    It was the common understanding in the neighborhood that the Blue River was the dividing line between Boone's land and the six-acre tract.

The defendant then took the stand in his own behalf and said he was a farmer and not familiar with land titles; had farmed all his life; that when he got his deed in 1902 he took possession of all the land on the east side of the Blue River.    Then the following occurred:

"Q.    Did you think at that time that your deeds called for all on that side?

"Mr. JONES:    I don't think it is material what he thought.    The deed speaks for itself, a description by metes and bounds.

"THE COURT:    I don't think it is competent.

"Mr. GARNETT:    I don't think any of this evidence is competent.    I think it is as competent for the defendant as for the plaintiff.

"THE COURT:    I don't recall any testimony of that kind.

"Mr. GARNETT:    Mr. Boone testified in that way, but you haven't passed upon it.

"THE COURT:    The objection is sustained.

"To which ruling of the court the defendant at the time duly excepted.

"Q.    Mr. Cable, you say that after that deed you took possession of the whole of that tract of land east of the Blue?    A. Yes, sir."

Continuing, witness said that a Mr. Anderson was encroaching on him on the south; that thereupon among them they had a survey made.    As we grasp it, this survey was also made in connection with the establishment of a road, and no one seems willing to father it or pay for it.    When the surveyor ran out tract

A as a parallelogram (with the northwest corner a little ways on the west side of the Blue) witness was not there, but plaintiff was. Witness afterwards had a conversation with plaintiff and told him that he (witness) claimed no land on the west side of the Blue, but did claim all on the east side. Plaintiff then said he claimed all of the land except the six acres; said he had bought it from Bernard. Witness asked where Bernard's deed was. Plaintiff said Bernard had it. Witness told him, "You had better get your deed and examine it." Plaintiff then built some fence; witness tore it down. Witness then got his quitclaim deed from Morgan Boone, Jr., and fenced the land. When witness went to see Mr. Boone about the quitclaim deed, he took his abstract along and showed it to him, and told him he (witness) was in trouble; that plaintiff had fenced some of the land witness claimed; that there was a mistake in the deed; that he had talked with the surveyor and the surveyor had explained to him where the line was and was sorry witness was not present when the survey was made; that Mr. Boone took the abstract and said to witness: "I never owned no land across the Blue River at all; my father deeded that away before I was born;" and he said: "I will be too glad to give you a quitclaim deed if that will fix it." "I told him I thought that was all that was required; that my abstractor told me to get a quitclaim deed." Mr. Boone told witness that "he [Weissenfels] knows he has got no right on the east side of the Blue River." Witness paid Mr. Boone all he asked for the quitclaim deed.

On cross-examination, witness said in substance, among other things, that he saw the deed he got from the Taylors; that he bought the land through Whipple & Woods, agents for the seller; knew nothing about

what the Taylors claimed to own; what made him think the Blue River was the line was that he saw the receipt the elder Boone gave to Lea, and it says six or seven acres; that in getting the quitclaim from Mr. Boone he didn't know he was buying any land; he was just getting a quitclaim to fix his title.

On re-direct examination, he further testified that he had heard plaintiff say more than once that his land was on the west side of the Blue River.

In rebuttal, plaintiff took the stand and denied having any conversation with defendant to the effect that he only owned land west of the Blue; never had any conversation with defendant about what he owned until the survey was made; that he understood from Mr. Bernard that defendant only owned six acres of land in the southeast corner; that he had paid his taxes according to the assessor's book—first on thirty-four acres, and then on thirty-four acres less tract B.

On cross-examination, he said he never had read his tax-receipts, and did not know that he was assessed with land west of the Blue; that he had never read the deed from Bernard to him; that he had taken possession on the east side of the Blue up north at the corner (this possession, we infer, relates to a private road or passway there); that he never knew his deed covered only land on the west side of the Blue until Cable told him, after the survey was made.

While there was some evidence that the banks of the Blue had caved in a place or so, yet there was no evidence worthy of the name that the main, well-defined channel of the Blue River had shifted since Morgan Boone, Jr., made his deed to Garnett. As said, this stream had reached the dignity of a fishing stream and was of so pronounced a character that when the survey was made it was not fordable and the surveyors waited for ice to form to cross and locate the northwest corner of tract A.

At the close of the evidence, plaintiff tendered two amendments to his petition on the theory that such amendments would accord with the proof. They were directed to charging that the quitclaim deed from Morgan Boone, Jr., to defendant of date of February, 1904, was obtained by fraud and deceit and asking it to be annulled. The court refused to allow these amendments. Thereupon plaintiff offered to amend his replication and set up the same matter. This was also disallowed. Thereupon the court entered its decree, vesting all the southeast quarter of the northeast quarter in plaintiff, except tracts A and B.

On such record, ought the decree to be sustained?

I. To sustain plaintiff's theory that the original deeds from Boone to Garnett, from Garnett to Bernard and from Bernard to him (which deeds all refer to the Blue River as the east boundary of his land) gave him a title east of the Blue, plaintiff's learned counsel argue that the porous and friable quality of the soil of Jackson county make the shifting of the channel of the Blue an easy matter and naturally to be expected to come to pass. The inference is that the stream, in the flux of time and water, has made a new channel and new banks further to the west, thus putting a portion of plaintiff's original tract east of the Blue.

The trouble with this theory is there is no evidence showing the channel of the Big Blue shifted as argued, or shifted at all. To the contrary, there was testimony that large trees were growing on either bank; and the testimony tends to show that the waters of the Blue were now flowing within its ancient banks, serving a purpose of use and diversion along (and for) several lines, to-wit, fish-lines as well as boundary lines.

II. It is argued on defendant's behalf that the naked record title to the little tracts 1, 2 and 3 was

in Morgan Boone, Jr., at the date of his quitclaim deed to defendant, on February 15, 1904; that by that deed title passed to defendant; and that, as long as that deed stands, it is an insurmountable obstacle in the way of plaintiff's recovery.    As we see it, plaintiff's learned counsel inferentially concede the force of· defendant's position, but seek to parry that force by arguing that the deed was the product of fraud and deceit practiced on Boone and is without consideration, and, therefore, should be brushed away to let in plaintiff's special warranty from Boone, executed some months later.    [Conveyance No. 5 in plaintiff's chain of title.]    To that end it is insisted that the chancellor should have permitted an amendment to the petition to conform to the proofs, setting up fraud and deceit as a ground for annulling that deed and seeking to set it aside; and, failing in that, we should treat the petition as amended and let the case ride off on the theory that the amendment was ingrafted upon the stock of the original petition, and the relief sought should be granted.    But we cannot adopt plaintiff's view for more reasons than one.

(a)    In the first place, if we concede that the naked legal title to tracts 1, 2 and 3 had not passed out of Boone prior to the date of that deed, and if we go further and concede that Boone was defrauded by the execution of that deed to defendant, then the fraud touches Boone alone and the right of action on the fraud is not a vendible commodity to pass from one to another by dicker and sale.    The right to sue to set aside that deed was in Boone, remained in him (if anywhere) and did not pass by his subsequent special warranty to plaintiff.    [Smith v. Harris, 43 Mo. 557; Jones v. Babcock, 15 Mo. App. 149; Wilson v. Railroad, 120 Mo. 45; Haseltine v. Smith, 154 Mo. 404; Hayward v. Smith, 187 Mo. 464.]

The general rule that a subsequent grantee may

not maintain a suit to set aside a prior fraudulent deed from his grantor to another is subject to a main modification, viz.: if such subsequent grantee had a prior, independent, equitable right in the subject of the grant, then he may maintain his bill to set aside the fraudulent conveyance of his grantor standing in the road of clearing up and perfecting his original, prior, independent, equitable right in the subject of the grant. [See cases, *supra.*] But such exception to the general rule does not help plaintiff in this case, because there is not a particle of substantive proof that plaintiff had a prior, independent, equitable right in any land east of the Blue River before he procured his special warranty deed from Morgan Boone, Jr. That deed was a junior conveyance. Defendant's quitclaim was a senior conveyance. By that quitclaim, until set aside, Boone's title passed from him. Therefore, there was nothing for the special warranty to operate on—Boone having nothing, could give nothing, *ergo,* plaintiff got nothing.

(b) In the second place, if we were persuaded to adopt the theory of plaintiff's learned counsel and treat the case as if the petition was amended as prayed into a bill to set defendant's quitclaim aside then we are met with the further fact that there is no evidence of fraud or deceit practiced by defendant upon Morgan Boone, Jr. It is a commonplace of the law that to set aside so solemn an instrument as a deed for fraud requires proof of a character so high and stringent as to go beyond the mere preponderance of the testimony and remove all reasonable doubt. Here there is not only no proof of the exacting standard indicated, but there is no proof of any probative weight of any fraud, whatever, as said. Mr. Boone seems to be a just man and an amiable man. He does not say defendant misled him by a false suggestion or by a suppression of the truth. Apparently defendant told

him the truth and all he knew of it.    His desire in making defendant's deed was to give him the land on the east side of the Blue River because he thought his father deeded that land away, and that plaintiff was entitled to nothing east of the river.    Subsequently, when he made his new deed to plaintiff, he took another view of the matter.    But his ambulatory views could not change the operative effect of his former deed, unless the fraud and deceit of defendant was the moving cause in making it.

III.    Over the objection of defendant, plaintiff was allowed to introduce evidence of Boone's intent and purpose in making the Garnett deed, and his intent and purpose in making the quitclaim deed to defendant, and the special warranty to plaintiff.    It is elementary that in the absence of mutual mistake or fraud and deceit and in the absence of any ambiguity in a deed the grantor may not whittle away the operative words of a grant by testifying to a condition of mind, what his intentions and purposes were.    His *act* speaks louder than his intents and purposes.    What he *does* weighs down what he *thinks*.

The consideration of a deed is open to investigation and explanation; but this rule (in cases of the character at bar) does not go so far as to let in proof overturning the operative words of a grant in a deed free from ambiguities, or varying or contradicting the deed itself or the descriptions contained therein.    The consideration in defendant's quitclaim from Boone was $2, and, therefore, small; but the consideration    in Boone's special warranty to plaintiff was $1, and, therefore, smaller. But neither the one consideration nor the other vitiated the deed as a conveyance.    For the purpose of transferring title a quitclaim is as effective as any other deed, barring outstanding equities, not the subject of record, and barring recourse on covenants of warranty.

The foregoing propositions need no support from an array of authorities; but one or the other of them, as pointed out by defendant's diligent counsel in an excellent brief, may be found reasoned out and laid down in the following:   Chew v. Kellar, 171 Mo. 1. c. 225; Christ v. Kuehne, 172 Mo. 1. c. 124; Edwards v. Latimer, 183 Mo. 1. c. 626; Winter v. Railroad, 160 Mo. 1. c. 176; Harding v. Wright, 119 Mo. 1; Strong v. Whybark, 204 Mo. 341.

Other questions discussed by counsel are not deemed controlling in arriving at a just result and may be put aside.

In the view we take of this case, the decree does not do equity.

The cause is reversed and remanded, with directions to the lower court to enter a decree vesting the title to all of the southeast quarter of the northeast quarter west of the Big Blue in plaintiff, subject to the right of way of tract B, and vesting the title in all said southeast quarter of the northeast quarter east of the Big Blue in defendant—nothing herein to be considered as an adjudication one way or the other upon the right of plaintiff to use a private road or passway to his land, crossing the Big Blue near the northeast corner of said southeast quarter of the northeast quarter, about which there was some testimony.

All concur.

ON MOTION FOR REHEARING.

LAMM, J.—In a motion for a rehearing plaintiff's learned counsel, among other reasons for granting one, set up the following contention, viz.:   "Furthermore, it is proper to observe here that we claim *mistake* in the execution of the quitclaim deed as well as deceit"—the quitclaim deed referred to being the one from Boone to defendant.   If counsel by that contention

mean to say that they sought to amend the pleadings so as to base a right to avoid the deed on *mistake* as well as deceit, they inadvertently fall into error. No such offer was made. The first amendment offered was this: "Plaintiffs further state that the quitclaim deed from Morgan Boone and wife to the defendant Cable, dated the 15th of February, 1904, was procured by deceit and misrepresentation and without consideration, and that same constitutes an apparent cloud on the title and asks the same be removed." The second amendment offered was like unto the first. If counsel mean that in their brief here they claimed *mistake* in the deed as a reason for sustaining the decree, that is true. But it is elementary that a decree must be responsive to the pleadings and must be within their lines. [Black v. Early, 208 Mo. 281, and cases cited.] So, too, it is rudimentary that a mistake furnishing ground for equitable interference must be a *mutual* mistake of fact, *etc.* [Chrisman v. Linderman, 202 Mo. l. c. 613.] There was no substantial evidence to base such form of mistake upon, and, there being no offer of such amendment, the question of mistake is in the air. If the evidence had warranted the amendment, and if the amendment had been offered, the decree being for plaintiff, we could have treated the case as if the amendment had been made. [Young v. Glascock, 79 Mo. l. c. 579, *et seq.*]

The motion for a rehearing is overruled. All concur.